### UNITED STATES v. STAR CONST. CO., Inc., et al.
### No. 4094.

United States Court of Appeals
Tenth Circuit.

Jan. 2, 1951.

Robert E. Shelton, U. S. Attorney, Oklahoma City, Okl., for appellant.

Luther Bohanon and Roy Lytle, Oklahoma City, Okl. (Bohanon & Adams, Keaton, Wells, Johnson & Lytle, Charles E. France and France, Johnson, Gordon & Cook, Oklahoma City, Okl., were on the brief), for appellees.

Before PHILLIPS, Chief Judge, and BRATTON and MURRAH, Circuit Judges.

PHILLIPS, Chief Judge.

The United States brought this action to recover the sum of $110,000 "excessive profits" upon four construction contracts renegotiated under § 403, Sixth Supplemental National Defense Appropriation Act, 1942, as amended, 56 Stat. 245, 56 Stat. 982, 57 Stat. 347, 57 Stat. 564, 58 Stat. 78, 59 Stat. 294, 50 U.S.C.A.Appendix, § 1191, now called the Renegotiation Act.

On May 20, 1942, D. H. Rowland organized the Star Construction Company, Inc.,[1] under the laws of Oklahoma. He associated with him, H. C. Adams and B. L. Miracle. The capital stock of Star of Oklahoma consisted of 100 shares of the par value of $500 per share. One share was issued to Adams, one share to Miracle, and 98 shares to Rowland.

The four contracts were awarded to Star of Oklahoma after its incorporation and prior to September 1, 1942. Rowland paid into Star of Oklahoma, $1500, and gave his note to it for $48,500. He also furnished Star of. Oklahoma with certain equipment. On the personal credit of Rowland, Star of Oklahoma borrowed $200,000. Adams was employed at a stipulated salary with an understanding that upon the completion of the contracts he was to participate in some way in the profits. In the fall of 1942, after the first contract was completed, and the remaining three contracts were 80 per cent completed, the parties gave consideration to the basis upon which Adams should participate in the profits. As a result, Rowland and Adams agreed that Rowland would transfer to Adams all of the corporate stock of Star of Oklahoma for $178,500, to be evidenced by Adams' note to Rowland, due 90 days after date, with interest at four per cent per annum. Adams' worth at that time was approximately $15,000. On November 30, 1942, Adams, as the owner of the capital stock of Star of Oklahoma, transferred to it all of its stock in exchange for all its assets, including the uncompleted contracts, and took assignments of the contracts. Following that, Adams organized the Star Construction Company under the laws of Delaware.[2] Adams sold all of the assets he had acquired from Star of Oklahoma to Star of Delaware, including the three uncompleted contracts, for a consideration of $178,500, evidenced by an unsecured note of Star of Delaware, dated December 1, 1942, due 75 days after date, with interest at four per cent per annum. Star of Delaware had a capital stock of $100,000, divided into 1000 shares of the par value of $100 per share. Fifteen shares of Star of Delaware were issued to Adams and two qualifying shares to other persons. Star of Delaware completed the unfinished contracts. After completion of the contracts, Star of Delaware paid its note to Adams, Adams paid his note to Rowland, and Rowland paid his note of $48,500 to Star of Delaware.

The Under Secretary of War, acting on behalf of the War Contracts Price Adjustment Board, and pursuant to the Renegotiation Act, determined the excessive profits to be $110,000. The Under Secretary of War, in his determination of excessive profits, undertook to make not only Star of Oklahoma, but also Star of Delaware, Rowland, and Adams, liable as successors to the liabilities of Star of Oklahoma for the amount of profits determined to be excessive. Rowland and Adams were not parties to the renegotiation proceedings. The notice required by 50 U.S.C.A. Appendix, § 1191(c) (1) was not given either to Rowland or Adams.

The trial court, while finding no actual fraud, concluded that the corporations were mere alter egos of Rowland and Adams, that the corporate entity should be disregarded and the contracts should be considered as having been entered into with Rowland and Adams as an entity, and that they were liable individually for the determined excessive profits, less the amount of taxes paid by them on profits derived from the four contracts. It ordered that a further hearing be had to determine the tax credit.

1. Hereinafter called Star of Oklahoma.

2. Hereinafter called Star of Delaware.

Evidence was introduced which showed that Star of Oklahoma paid federal income and excess profits taxes for the year ended November 30, 1942, aggregating $16,387.48 on and out of profits derived from the four contracts; that Star of Delaware paid federal income and excess profits taxes for the year ended November 30, 1943, aggregating $156.75 on and out of the profits derived from the four contracts; that Rowland paid out of profits derived from the four contracts a capital gains tax of $32,125 on account of the transfer of his stock to Adams; and that Rowland and Adams on account of salaries received by them out of profits derived from the four contracts, paid income taxes aggregating $13,501.48.

The aggregate amount of taxes paid by the several entities because and out of profits derived from the four contracts was $62,170.71.

The only profits made by the two corporations came from the four contracts. On all their other transactions, the corporations suffered losses.

The aggregate amount of taxes so paid was established by the evidence of a certified public accountant. There was no substantial evidence to the contrary. While both the witnesses for the United States and for the corporations and Rowland and Adams experienced difficulty in arriving at the proper credit for federal income and excess profits taxes as provided in § 3806 of the Internal Revenue Code, 26 U.S. C.A. § 3806, the United States Attorney

and counsel for the two corporations and for Rowland and Adams finally agreed that the proper tax credit was $62,170.71.[3]

Thirty thousand dollars had been paid to the United States as an offer of compromise. Credit was given for that amount and for the amount of $62,170.71 on account of income and excess profits taxes paid, leaving a balance of $17,829.29. The court awarded the United States judgment for such balance against Star of Oklahoma, Star of Delaware, Rowland, and Adams, with interest at six per cent per annum from the date of the judgment. Thereafter, on March 31, 1950, the United States Attorney filed a motion to correct the judgment so as to award interest from May 11, 1945. The prayer of the motion read as follows: "* * * plaintiff moves the Court for an order correcting said judgment to provide that plaintiff shall have and recover judgment of and from the defendants, Star Construction Company, Inc., an Oklahoma corporation, Star Construction Company, a Delaware corporation, H. C. Adams and D. H. Rowland, for the sum of $17,829.29, together with interest thereon at the rate of 6% per annum from May 11, 1945, until paid, and for costs."

On the last day of the period within which an appeal could be taken from such judgment, the United States filed its notice of appeal. It presents two contentions: (1) that the tax credit was excessive, and (2) that interest should have been awarded from May 11, 1945.

3. At the conclusion of the final hearing on the tax credit issue, on December 22, 1949, the court made the following statement: "We are not going to pay a lot of attention to red tape. This court has held that there was but one entity. Now whatever taxes were paid under the heads of these various entities, were really one entity. They have held in the renegotiation deal that was error. I called it 'D' and you said, 'A'; that D was the proprietor of this entire transaction, and therefore, these other taxes that have been paid were paid through error, and the government ought to be just as fair with the citizens as it wants the citizens to be fair with it. Are you

in a position to say that the taxes paid on these particular construction contracts were not $62,170.71?"

Nelson Herbert, a witness for the United States, answered: "No, I am not Judge."

Mr. Shelton, the United States Attorney, then stated: "I think that is approximately correct, the amount that was paid by all the entities. I think we had that pretty well agreed on up here the other time."

The court then stated: "Yes, I think so too."

Mr. Bohanon, counsel for the two corporations and Rowland and Adams, then stated: "That is right."

We are of the opinion that the United States Attorney, both by his statement in open court on December 22, 1949, and by his motion to correct the judgment, agreed that a tax credit in the sum of $62,170.71 should be allowed, and that in that posture of the record, the United States may not now challenge the correctness of the tax credit. A party is not aggrieved by a ruling regularly made, with his express or implied consent.[4]

If the net amount due on determination had been a liquidated amount, or, if it was susceptible of being arrived at by computation, then the court in the exercise of its discretion could have awarded interest from the date payment was demanded.[5] But, here, whether the Under Secretary of War was authorized to determine that Rowland and Adams were liable as successors to the corporations for the amount due as excessive profits, whether they were entitled to tax credits, and the proper amount of such tax credits, were all open and sharply disputed questions, and remained so until final judgment in the case. We hold that the amount due on the determination of excessive profits was an indefinite, unliquidated, and disputed claim and that it was arrived at by agreement of the parties and by adjudication by the court and that until such adjudication no interest was due.[6]

Moreover, the complaint did not allege, and the proof did not establish any demand for payment of the determined excessive profits prior to the filing of the complaint. Finally, interest was not allowable as of right, but the allowance or disallowance thereof rested in the discretion of the trial court.[7]

Affirmed.

---

4. Little Rock Water-works Co. v. Barret, 103 U.S. 516, 26 L.Ed. 523; Curry v. Curry, 65 App.D.C. 47, 79 F.2d 172, 174; 4 C.J.S., Appeal and Error, § 213, p. 404.

5. Abell v. Anderson, 6 Cir., 148 F.2d 372, 374, 375.

6. Saulsbury Oil Co. v. Phillips Petroleum Co., 10 Cir., 142 F.2d 27, 40; Grand River Dam Authority v. Jarvis, 10 Cir., 124 F.2d 914, 918.

7. United States v. Bonnell, 9 Cir., 180 F. 2d 145, 148.