**UNITED STATES v. HOPKINS.**
**Civ. No. 27318.**

United States District Court
N. D. Ohio, E. D.

Oct. 10, 1950.
On Motion For Reconsideration
Jan. 29, 1951.

Don C. Miller, Dist. Atty., Cleveland, Ohio, for plaintiff.

John J. Collins, Cleveland, Ohio, Brundage & Short and Charles F. Short, Jr., Chicago, Ill., for defendant.

JONES, Chief Judge.

This is an action to recover excessive war profits.

The Government has moved for summary judgment and defendant contends that there is a material factual issue.

In these actions to recover excessive profits, the United States District Courts act as collection agencies. Upon the determination of excess profits by the War Contract Price Adjustment Board, the Government may initiate suit in a District Court for collection of the excess profits as determined. 50 U.S.C.A. Appendix, § 1191(c)(2). This action goes to judgment summarily as the defendant is given no opportunity to defend. U. S. v. Clark, D.C., 72 F.Supp. 393. If the defend-

ant raises questions as to coverage, notice, amount of recovery and time of initiation of proceedings, he must present them to the Tax Court which has been given exclusive jurisdiction to decide these matters de novo. U. S. v. Howell Electric Motors Co., D.C., 78 F.Supp. 627. Defendant has petitioned the Tax Court for redetermination of these matters but such petition does not stay the execution of the Board's order in this action. 50 U.S.C.A. Appendix, § 1191(e)(1).

No interest rate has been provided in the statute. The Government here asks for 6% interest on the judgment. Since the United States pays low interest rates, it would seem that 3% interest would be better suited to modern times, where no statutory interest is provided in such cases. Judgment for the United States may be entered.

On Motion for Reconsideration.

This is a motion for reconsideration of this court's memorandum opinion awarding judgment for plaintiff at 3% interest.

The Government has no complaint about securing judgment but it does claim the right to 6% interest. Its arguments for an award of 6% interest may be summarized as follows:

1. The 6% interest rate has by implication been approved by Congress;

2. One of the main objectives of the renegotiation statutes is the prompt and efficient collection of renegotiation debts;

3. The majority of courts which have ruled on this issue have awarded 6% interest;

4. A uniform rate of interest is necessary to prevent discriminatory treatment of renegotiation debtors.

■ The fact remains, however, that Congress did not originally, and has not since, seen fit to provide a statutory interest rate on renegotiated debts. It has been held that where Congress so fails to act, courts may allow interest on debts owing to the United States, but such allowance is to be based on equitable principals. Royal Indemnity v. U. S., 313 U.S. 289, 61 S.Ct. 995, 85 L.Ed. 1361; U. S. v. United Drill & Drill Corp., D.C., 81 F.Supp. 171. The matter of interest, then, rests in the sound discretion of the trial court.

Considering the points raised by the Government in order, I find little merit in the claim that this court has abused its discretion in setting the interest rate at 3%.

■ 1. The first point raised by the Government was considered in U. S. v. Bonnell, 9 Cir., 180 F.2d 145, with which decision I agree fully. The best that can be said about the silence of Congress is that it indicates that it does not disapprove of the renegotiation Board's regulation calling for 6% interest. It is much more likely, however, and the brief of the Government so indicates, that there was so much controversy on this point that Congress was unable to arrive at a majority decision. In other words, it is likely that congressional silence on this matter indicates a desire to leave the matter of interest to the discretion of the court awarding judgment for the United States. At any rate, I cannot hold that the failure of Congress to act is a mandate which destroys this court's discretion in regard to the interest rate applicable to such debts.

2. It is undoubtedly true that prompt collection of these debts is one of the primary purposes of the Act. And because it is, Congress provided several methods by which this purpose could be achieved. Suit in a district court is but one of them. It is to be noted that the idea that interest at 6% speeds the collection of these debts originated with the administrative and judicial, and not the legislative, bodies of the Federal Government, and it was only because of judicial discretion that 6% interest was ordered in some cases. The Government, having obtained its end because of exercise of discretion of some district courts, would now have us hold that this discretion no longer exists, and that this court must blindly follow the lead of other courts.

■ If prompt collection is a primary purpose, why did the Government not use

the other methods provided in the statute? Why did it delay 20 months in filing this action when it knew that in this type action final judgment usually follows the filing of the action with little or no delay? An award of 6% interest under these facts would amount to the imposition of a penalty.

■ 3. The majority of cases have awarded 6% interest. No cases from this district or circuit have been cited which deal directly with this problem. The other cases are not controlling on this court and as indicated above it prefers to follow the ruling in the Bonnell case.

■ 4. A uniform rate may well be necessary to prevent discriminatory treatment of renegotiation debtors, but I cannot see the justice of setting an interest rate so high that in many cases it would act as a penalty, and then attempting to defend this high rate on the ground that it prevents discrimination between individual debtors. In the individual cases it is even more apparent that a blanket 6% rate cannot be defended. Here, the final determination of the amount due the Government has not yet been made. That question is before the Tax Court. If it is there determined that defendant has been overcharged, that overcharge will be refunded, but at 4% interest. If the Government is allowed to collect this debt with 6% interest, and to refund any overcharge with 4%, it should be apparent, even to a Government agent, that the actual interest on the final amount due will be greater than the arbitrary 6% now demanded by the Government. It seems to me that such a position cannot be defended.

■ The only equitable method, then, is to charge interest at a rate which will compensate the Government for loss of use of the funds. In this day the Government can and does obtain money at rates much less than the 3% set by this court. Such a rate will make the Government whole and to me it is of little consequence that some advantage may accrue to the defendant because he has had the use of the money at this interest rate.