### UNITED STATES v. EDWARD VALVES, Inc.
No. 1092.

United States District Court
N. D. Indiana, Hammond Division.
Oct. 26, 1951.

Gilmore Haynie, U. S. Atty., Fort Wayne, Ind., by Walter J. Keckich, Asst. U. S. Atty., Hammond, Ind., for plaintiff.

Hamel, Park & Saunders, Washington, D. C., James Fleming, Fort Wayne, Ind., for defendant.

SWYGERT, District Judge.

The defendant resists the motion of the government for summary judgment on counts I, III, and IV of the complaint initially on the ground that the action is prematurely brought. As counsel for the defendant has admitted, this amounts virtually to a petition for a stay of this action pending the disposition of proceedings in the Tax Court for a de novo review of the defendant's renegotiation liability for the taxable years covered by those counts of the complaint.

It is the government's contention that the court is without jurisdiction to entertain this request because Section 403 (e) (1) of the Renegotiation Act of 1943, 50 U.S.C.A. Appendix, § 1191 (hereinafter called the Act), as it affects this litigation, provides that the filing of a petition for a de novo redetermination by the Tax Court does not stay the execution of a unilateral determination of excessive profits by the War Contracts Price Adjustment Board (hereinafter called the Board).

The effect of this provision is not as great as the government asserts. That the Act may contemplate that this administrative determination of excessive profits constitutes an immediate liability to the government is not sufficient to deprive the court of its inherent discretionary power to grant a stay of proceedings in a proper case. See Aircraft & Diesel Equipment Corp. v. Hirsch et al., 1947,

331 U.S. 752, 775, note 39, 67 S.Ct. 1493, 91 L.Ed. 1796. The defendant has not, however, shown any legitimate basis for the exercise of that discretion. True, if the defendant secures the relief it seeks in the Tax Court, the liability which the government here asserts will cease to exist, but the language of the Act makes it apparent that possibility does not prevent its being a presently collectible claim. In view of this scheme of collection, the fact that the defendant will suffer inconvenience if compelled to pay now, without more, cannot be considered a sufficient basis for the delay it seeks.

■ The defendant also resists recovery on counts I, III, and IV of the complaint on constitutional grounds. It is the defendant's position that to permit the government to collect its claim before the completion of the administrative process would be violative of the Fifth Amendment, where the Act itself is silent on the right to a refund in the event the defendant is successful in the Tax Court. It is true, as the defendant asserts, that an express mention of the matter of refunds is absent from the Act, but it is difficult to avoid the conclusion that the Act implicitly recognizes such an obligation. If that were not so, the hearing provided before the Tax Court would be but an empty formality where the asserted excessive profits had already been eliminated by one of the methods prescribed in Section 403 (e) (2). Cf. Ashbacker Radio Co. v. Federal Communications Commission, 1945, 326 U.S. 327, 66 S.Ct. 148, 90 L.Ed. 108. Money erroneously collected as excessive profits has in the past been refunded by annual appropriation, see, e.g. 60 Stat. 622 (1946); 61 Stat. 623 (1947), and not apparently, as a matter of legislative grace. The appropriation acts have typically been prospective in operation, that is, they have not provided funds to pay specific determinations of the Tax Court, but rather "to refund *any* amount finally adjudged or determined to have been erroneously collected by the United States pursuant to a unilateral determination of excessive profits * * *." (Emphasis supplied) 60 Stat. 622 (1946).

No substantial difference therefore exists between this situation and that presented by the immediate collection of an asserted tax liability, a procedure that has consistently been recognized as constitutional. See Phillips et al. v. Commissioner of Internal Revenue, 1931, 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289.

Except with regard to the question of interest, the defendant has advanced no other contentions with regard to these counts of the complaint, and has admitted that there are no material facts in dispute. It is accordingly concluded that the government's motion for summary judgment on these counts should be granted.

■ The next question requiring determination is that raised by the defendant's cross-motion for summary judgment on count II of the complaint. In brief, the defendant contends that the Board was without jurisdiction to enter an unilateral determination of excessive profits for the taxable year involved because the renegotiation process was not completed within the period of time prescribed by Section 403 (c) (3) of the Act. The government has questioned the right of the defendant to raise that objection in this action, relying on the following language of Section 403 (c) (1): "In the absence of the filing of a petition with The Tax Court of the United States * * * such (War Contracts Price Adjustment Board) order shall be final and conclusive and shall not be subject to review or redetermination by any court or other agency."

The effect of this provision was considered by the Supreme Court in the case of Lichter et al. v. U. S., 1948, 334 U.S. 742, 68 S.Ct. 1294, 92 L.Ed. 1694, under factual situations rather closely related to that presented here, and it is consequently upon an analysis of that decision that an examination of this problem must in a large part depend. In the Lichter case, as in the two cases with which it was consolidated on reveiw, no appeals to the Tax Court from decisions of the Board were ever taken. When the government brought actions of the same type as the instant proceedings for the recovery of excessive profits, the defendants raised various con-

stitutional objections to the Act, and in addition interposed several defenses directed to its applicability to the contracts involved. The Court, as was anticipated in Aircraft & Diesel Equipment Corp. v. Hirsch et al., 1947, 331 U.S. 752, 775–776, 67 S.Ct. 1493, 91 L.Ed. 1796, considered and determined the constitutional issues, but refused to permit a general assault on the Board's determinations. As the Court stated, 334 U.S. at page 792, 68 S.Ct. at page 1319: "We uphold the decisions below and the contentions of the Government to the effect that the statutory provision thus made for a petition to the Tax Court was not, in any case before us, an optional or alternative procedure. It provided the one and only procedure to secure a redetermination of the excessive profits which had been determined to exist by the orders of the respective Secretaries or of the Board in the cases before us. Failure of the respective petitioners to exhaust that procedure has left them with no right to present here issues such as those as to coverage and the amount of profits which might have been presented there. Accordingly, there is excluded from our consideration in this proceeding the contention in the Lichter case that the petitioners' subcontracts were exempt from renegotiation on the ground that they were subcontracts under prime contracts with a Department of the Government and had been awarded to them as the result of competitive bidding for the construction of buildings and facilities. There is excluded also, for example, the contention in the Pownall case that petitioners' contracts which were for amounts under $100,000 each were not subject to renegotiation. Likewise, in the Alexander case, there is excluded the petitioner's contention that it had not made excessive profits within the meaning of the statute and that its contracts for processing wool were not 'subcontracts' within the meaning of the Original Renegotiation Act. * * * we hold that the respective petitioners do not have the right to present questions as to the coverage of that Act, as to the amount of excessive profits adjudged to be due from them or as to other comparable issues which might have been presented by them to the Tax Court upon a timely petition * * *."

It is quite probably true that questions relative to the discharge of renegotiation liability do not fall within the ordinary understanding of the phrase "questions as to the coverage of that Act." Whether it is an issue that should be considered *comparable* to that of coverage is, however, more difficult to answer. It has been argued that a great difference exists between determining whether a contract is one which the Act intended to be subject to renegotiation and determining whether a possible liability on a contract concededly covered by the Act has been discharged by operation of law. There can be no quarrel with the logic of that distinction, but it seems overwhelmed by the far more relevant similarities between them. In each case the Board must decide its own jurisdiction over the contract; in each a decision favorable to the defendant would destroy all liability for excessive profits as a matter of law; and in each a full de novo review of the question can apparently be secured in the Tax Court. Whether as a practical matter there are any questions not involving the constitutionality of the Act which are nonetheless questions not comparable to coverage need not be decided, but it at least seems apparent that the defense attempted to be raised here is not one of them.

It is not difficult to accept the proposition that where the constitutionality of the Act on its face, and consequently the entire structure of contract renegotiation, is at issue, the most searching examination of that fundamental question is appropriate in a collateral proceeding regardless of the availability of further administrative relief. Neither is it difficult to follow the reasoning that where the procedures provided by the Act have been pursued to their final conclusion, questions of whether the Tax Court's determination was within its competence and was regularly made are available upon review or in a collateral proceeding. Cf. Estep v. United States, 1946, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567. This has been substantially the hold-

ing of the Court of Appeals for the District of Columbia Circuit, although perhaps not upon the same rationale. See Lowell Wool By-Products Co. v. War Contracts Price Adjustment Board, D.C.Cir., 1951, 192 F.2d 405; Blanchard Mach. Co. v. R. F. C. Price Adjustment Board, 1949, 85 U.S.App.D.C. 361, 177 F.2d 727, certiorari denied 1950, 339 U.S. 912, 70 S.Ct. 571, 94 L.Ed. 1338; U. S. Electrical Motors, Inc., v. Jones et al., 80 U.S.App.D.C. 329, 153 F.2d 134.

The difficulty with the defendant's position is that it has failed to pursue first the opportunities for relief which the Act provides. Accepting, as it must, the constitutionality of the Act on its face, the defendant has nontheless ignored the remedies existing within its framework. Under the Lichter case, that precludes consideration here of the defense it seeks to assert.

█ The final questions for determination relate to the allowance of interest on the amounts specified in the renegotiation orders involved in this action. It is well settled that interest on unpaid balances which have been determined to be owing to the government can be allowed by the court. United States v. United Drill & Tool Corp., D.C.Cir., 1950, 183 F.2d 998; United States v. Bonnell, 9 Cir., 1950, 180 F.2d 145; Sampson Motors, Inc., v. United States, 9 Cir., 1948, 168 F.2d 878.

█ The government contends that the court has no discretion in allowing a different rate of interest than six per cent per annum on unpaid renegotiation debts. This is based on the claimed approval and ratification by Congress of the administrative practice to collect this rate of interest on this type of liability. The government says that Congress must be presumed to have known of this practice when it amended the Act in 1945, 59 Stat. 294 (1945), extending its termination date, and that by the passage of the 1945 Act and the various appropriation bills under which refunds have been made to contractors subject to renegotiation, Congress has approved and ratified the administrative practice of collecting six per cent interest. This contention was also made in the Bon-

nell case and was answered contrary to the government's view. While that decision is not binding upon this court, the reasoning leading to it is persuasive. Accordingly, it is held that it is not mandatory that a rate of six per cent be fixed. As was stated in the United Drill & Tool case, 183 F.2d at page 1001: "In the absence of applicable statute, a federal court may fix the rate which will compensate the Government for loss of immediate use of money due."

As a corollary to this rule, the federal courts may determine, "according to their own criteria, the appropriate measure of damage, expressed in terms of interest, for non-payment of the amount found to be due." Royal Indemnity Co. v. United States, 1940, 313 U.S. 289, 296, 61 S.Ct. 995, 998, 85 L.Ed. 1361.

█ It has been Congressional policy to allow interest up to four per cent per annum on refunds to contractors subject to the Act upon a redetermination of their excessive profits. See e. g. 60 Stat. 622 (1946). It seems only fair that a contractor should not be required to pay a higher rate of interest on the unpaid balance of his renegotiation liability than Congress allows on refunds when the contractor is found to have overpaid. This view is emphasized when it is remembered that interest on debts of this nature is "compensatory and intended to be neither punitive nor coercive." United States v. Corbetta, D.C.S.D.N.Y., 1951, 101 F.Supp. 529.

Further emphasis is lent by the fact that the Renegotiation Act of 1951 for the first time expressly provides for the collection of interest on unpaid renegotiation debts and fixes the rate at four per cent per annum. 50 U.S.C.A. Appendix, § 1215 (b) (2). It is therefore determined that the rate of interest to be allowed the government should be four per cent per annum from the respective dates set forth in the demand letters described in each count of the complaint.

Subsequent to the argument, the defendant moved to strike portions of the government's reply brief on the ground that they relate to matters outside the record. There is no question but that these matters are

extraneous and except for the fact that no consideration has been given to them the motion would be granted.

An order for summary judgment for the plaintiff and in accordance with the foregoing determinations will be entered herein.