UNITED STATES v. PHILMAC
MFG. CO. et al.

UNITED STATES et al. v. PHILMAC
MFG. CO. et al.

UNITED STATES v. PHILMAC
SPORTWEAR, Inc. et al.

Nos. 10396-10398.

United States Court of Appeals
Third Circuit.

Argued Oct. 19, 1951.

Decided Nov. 5, 1951.

---

518

William J. Holloway, Jr., Washington, D. C. (Holmes Baldridge, Asst. Atty. Gen., Grover C. Richman, Jr., U. S. Atty., Newark, N. J., Julian R. Wilheim, Attorney, Department of Justice, Washington, D. C., Stuart B. Rounds, Asst. U. S. Atty., Trenton, N. J., George W. Spangler, Attorney, Department of Justice, Washington, D. C., on the brief), for appellants.

Morris Spritzer, New Brunswick, N. J., for appellees.

Before MARIS, GOODRICH, and KALODNER, Circuit Judges.

GOODRICH, Circuit Judge.

These three cases involve suits by the United States against manufacturers for balances claimed under the Renegotiation Acts.[1] While the litigation in the District Court presented many points [2] the question here is greatly narrowed. It pertains to the government's right to recover interest. Narrowed still further it is whether the District Court's allowance of 2½% interest against the defendants is correct.

The argument for the United States is that 6% should have been allowed. This amount should have been allowed, it is argued, on either of two grounds: One is that this rate is stipulated by valid administrative regulations. The second is that even if the matter is one for the discretion of the judge, that discretion was abused in this instance in not allowing 6% interest instead of 2½%.

These cases become of less public importance because of the legislative establishment of a 4% rate in the 1951 legislation. But that legislative clarifica-

1. Renegotiation Act of April 28, 1942, 56 Stat. 226, 245–246, with amendments of October 21, 1942, 56 Stat. 798, 982–985, July 1, 1943, 57 Stat. 347–348, and July 14, 1943, 57 Stat. 564–565, is applicable to one of these three actions. The Renegotiation Act of April 28, 1942, as amended on February 25, 1944, 58 Stat. 21, 78–93, 50 U.S.C.A.Appendix, § 1191, i appli-

cable to the other two actions. Amounts were assessed against these companies for the years 1942, 1943.

2. As for instance constitutionality of the Acts, which was settled in a series of decisions reported under the title Lichter v. United States, 1948, 334 U.S. 742, 68 S. Ct. 1294, 92 L.Ed. 1694.

tion does not aid us, we think, in the determination of our cases. So we must proceed to answer the narrow and definite question from the legislative background and such general principles as we can call to our aid.

We sustain the government's argument on the basis of the regulation which provided for the 6% interest. We do not get into the question of whether the 6% rate of interest is necessarily required in the exercise of judicial discretion. Our reasons follow.

When the earlier renegotiation statutes were passed in 1942 and 1943 there was soon thereafter established the practice of imposing 6% interest upon those who were called upon to refund "excess profits." This practice was established as a regulation in September 1944 [3] by two boards which were set up, consisting of representatives from important government agencies including the War Department, Navy Department, Treasury Department, Reconstruction Finance Corp., War Production Board and Maritime Commission on the War Contract Price Adjustment Board. The Joint Price Adjustment Board represented all of these except the War Production Board.

■ Was this regulation valid? Our view is that it was. That interest may be recovered on money due the government even in unilaterally determined liability is well recognized.[4] Likewise, it has seemed pretty clear to courts handling cases arising under the Renegotiation statutes that one of the objectives to be attained was prompt collection from those who owed the government money.[5] A substantial rate of

interest aided in attaining this objective. Furthermore, a consideration of uniformity was important. It would seem unfair for a contractor in California to pay interest at a different rate from one in Massachusetts. We think, therefore that it was proper for the administrative board charged with the duty of carrying out this law to set an interest rate.

■ The 6% rate is certainly one hallowed by time. It has been standard for many years and is still the "legal" rate in many states even though with changing economy borrowers can now get money more cheaply if they have good credit. The 6% rate, however, is sufficiently orthodox that its selection cannot be described as arbitrary action.

In this case we have proof of legislative knowledge of the administrative regulation at the time these statutes were re-enacted. Indeed, the Committee dealing with the matter heard argument by representatives of the National Association of Manufacturers to the effect that it was unfair to charge the citizen 6% interest when he had to pay money and to give him a lower rate if he was entitled to get a refund from his government. It is shown, too, that knowledge of the 6% charge was brought to the attention of the Committee [6] and the Congress was notified, at least that those Boards were promulgating regulations under the renegotiation acts.[7]

Now it well may be, as Judges Orr and Jones have suggested,[8] that the Congress did not change the rate established by regulation because it could not collectively decide what change to make. But this

3. The regulations are published in 9 Fed. Reg. 12847 (October 26, 1944) and 9 Fed.Reg. 9117, 9118.

4. Billings v. United States, 1913, 232 U.S. 261, 34 S.Ct. 421, 58 L.Ed. 596; Railroad Co. v. United States, 1879, 101 U.S. 543, 25 L.Ed. 1068; United States v. Erie R. R. Co., 1882, 106 U.S. 327, 1 S.Ct. 223, 27 L.Ed. 151.

5. See United States v. Strontium Products Co., D.C.S.D.W.Va.1946, 68 F.Supp. 886, 888; United States v. Bonnell, 9

Cir., 1950, 180 F.2d 145, 148; Sampson Motors v. United States, 9 Cir., 1948, 168 F.2d 878, 879.

6. See Hearings, Committee on Ways & Means (House), 79th Cong. 1st Sess. H. R. 2628, pp. 92, 162, 163, 171, 173 (1945).

7. See Cong. Rec. (House) pp. 6077, 6079 (1945).

8. See United States v. Bonnell, Supra note 5, 180 F.2d at page 148; United States v. Hopkins, D.C.N.D.Ohio 1951, 95 F. Supp. 14, 16.

does not impair the force of the argument that Congress knew what the administrative body was doing and did not itself do anything about it.

So we have this situation. An administrative body is set up to act in a rather narrow and technical field. It establishes regulations. It takes the principle that people who owe money are under obligation to pay interest until they pay it back. It takes, also, the principle that this rule applies to persons who owe the government. It establishes, for good reasons, a rate which is an orthodox one for the detention of money. The Congress knows what the administrative agency has done and does nothing about it until 1951. We think we have here a typical case for upholding an administrative regulation.

It is true that during many of these years there are provisions, hidden in appropriation acts, for the refund of money to citizens who have over-paid and allowing them interest. That allowance varied from nothing to 4%.[9] But at the same time, Congress did nothing at all about the rate established by the administrative body in collections from citizens. The congressional practice regarding returns does not invalidate the otherwise valid practice of the administrative body as to collections.

Nor does the fact that in 1951 the Congress established a 4% rate for refunds to a citizen and a 4% rate for the obligations of citizen to government[10] affect the result of this case. When the Congress has acted, of course its legislative action supersedes previous regulations inconsistent therewith. But the action of Congress is not ipso facto retroactive, and is not here. If that body had wished to make the rate established for this year applicable to claims for years past it would have taken very few words to do so.

A number of cases have dealt with this interest provision. In some of them the 6% has been included in the court order or judgment sometimes without discussion.[11] In others, it has been called a matter of discretion.[12] The Ninth Circuit called the rate one of discretion too but, since government counsel had told the court it was, the issue between discretionary allowance and definitive regulation was not fully considered.[13] We think this is probably the first time a Court of Appeals has been presented with the question narrowed as it is in this case.

The judgment of the District Court will be reversed and the case remanded for further proceedings consistent with this opinion.

9. 59 Stat. 77, 90; 60 Stat. 600, 622; 61 Stat. 610, 623; 62 Stat. 394, 408; P.L. 150, 81st Cong., 1st Sess. 63 Stat. 356; P.L. 759, 81st Cong., 2nd Sess., 64 Stat. 595.

10. See Renegotiation Act of 1951, P.L. 9, Tit. I. § 105(b) (2) and § 108, 50 U.S.C. A.Appendix, §§ 1215(b) (2), 1218. See U. S. C. Cong. and Adm. Serv. (1951) pp. 411, 419, 440, 452.

11. United States v. Union Concrete Pipe Co., S.D.W.Va.1950, 93 F.Supp. 650; United States v. Corbetta, D.C.S.D.N.Y. 1951, 96 F.Supp. 22; Hall Planetary Company v. Henry L. Stimson,[1] Civil No. 26,858, D.C. District Columbia, June 23, 1949; United States v. Maguire Industries, D.C.S.D.N.Y.1951, 99 F.Supp. 326; Id., D.C., 99 F.Supp. 329; United States v. Martelli,[1] Civil No. 7384, N.J., November 18, 1947; United States v. Associated Companies of Roofing & Sheet Metal Contractors,[1] Civil No. 3839, W.D.Okl., Sept. 7, 1948; United States v. American Electric Fusion Corp.,[1] Civil No. 1583, N. D.Ill., Sept. 23, 1949; United States v. Larrabee,[1] No. 5495-M, S.D.Cal., Sept. 14, 1949; United States v. Dunn and Jones,[1] Civil No. 1519–48, D.C., District Columbia, June 23, 1949; Boyd v. Forrestal,[1] Civil No. 27,828, D.C., District Columbia, Oct. 4, 1949; United States v. Southern Nevada Industries, Ltd.,[1] D.C.Nevada, Oct. 7, 1949; United States v. Breedlove,[1] Civil No. 560, N.D.Texas, Jan. 31, 1951.

1. No opinion for publication.

12. United States v. Bonnell, Supra note 5; United States v. Star Const. Co., 10th Cir.1951, 186 F.2d 666; United States v. Hopkins, Supra note 7.

13. United States v. Bonnell, Supra note 5, 180 F.2d at page 148.