**UNITED STATES v. ABRAMS et al.**

No. 11469.

United States Court of Appeals
Sixth Circuit.

Decided May 19, 1952.

804

Jerome C. Fisher, Cleveland, Ohio, on the brief, for appellee.

Holmes Baldridge, Edward H. Hickey, Washington, D. C., Donald C. Miller, Cleveland, Ohio (John S. Mudri, Asst. U. S. Atty., Cleveland, Ohio, George W. Spangler, William J. Holloway, Jr., Washington, D. C., of Counsel), for appellant.

Before SIMONS, Chief Judge, and ALLEN and MARTIN, Circuit Judges.

ALLEN, Circuit Judge.

This is an appeal from the judgment of the District Court entered upon a complaint filed by the Government to recover a sum found by the War Contracts Price Adjustment Board to be due as excessive profits under the Renegotiation Act, 50 U.S.C.App. § 1191, 50 U.S.C.A.Appendix, § 1191. Notice of the unilateral order and determination of the Board was sent to the appellees October 15, 1945. The complaint was filed February 13, 1950. On June 2, 1950 and prior to the decision of the District Court, appellees paid $50,-152.72, which the court found was the principal sum due. The Government had prayed for judgment of interest at six per cent, but the District Court allowed three per cent interest on the principal from May 15, 1946 to June 2, 1950. The appeal is prosecuted from that part of the judgment which allowed interest at three per cent instead of six per cent.

The Government contends (1) that under valid regulations it was entitled to recover six per cent interest; and (2) that even in the absence of regulations the trial court should have awarded six per cent.

We think the judgment of the District Court was correct as to its authority to fix the interest. It is in accord with the weight of opinion as expressed by the Courts of Appeals and by the District Courts, and we think is necessitated by the provisions of the Renegotiation Act. United States v. Bonnell, 9 Cir., 180 F.2d 145, 148; United States v. United Drill & Tool Corp., 87 U.S.App.D.C. 236, 183 F.2d 998; United States v. Star Construction Co., Inc., 10 Cir., 186 F.2d 666, 669; United States v. Clark, D.C., 72 F.Supp. 393; United States v. American Metal Co., D.C., 86 F.Supp. 533; United States v. Hopkins, D.C., 95 F.Supp. 14.

The applicable statute is the Renegotiation Act of 1942. It fixed no rate of interest and delegated to the War Contracts Price Adjustment Board no power to fix the rate of interest. In addition, the War Contracts Price Adjustment Board was

given no general authority to issue regulations for the enforcement of the Act. The amendment of March 23, 1951, included such a provision authorizing the Board to make such rules, regulations and orders as it deems necessary or appropriate to carry out the provisions of the title, §§ 1211–1223 of the Appendix. 50 U.S.C. App. § 1219, 50 U.S.C.A.Appendix, § 1219. In this enactment of March 23, 1951, the Congress also established a rate of interest on the amount of excessive profits to be four per cent per annum, and provided that when the Tax Court of the United States redetermines the amount of excessive profits received by a contractor, interest at the rate of four per cent shall be paid. Section 1215 (b) (2) (A) (B) and (C).

The regulations which the Board was authorized to make under the Renegotiation Act of 1942, 50 U.S.C.App. § 1191, 50 U.S.C.A.Appendix, § 1191, covered certain limited subjects only. . The Board was authorized to prescribe by regulation the financial information required of contractors, (c) (5) (A), to establish by regulation the character of cases to be conducted by the Board and its agencies, (d) (5), to interpret and apply the exemption provisions of the Act, (i) (2), and to interpret and apply one specific definition, namely, that of "standard commercial article" (a) (7).

However, in 1944 the Board promulgated a regulation which established the rate of interest to be recovered on excessive profits as six per cent, and this was reiterated in later promulgations.

 The Government contends (1) that the Congress intended that the Board should implement the Renegotiation Act by appropriate regulations and (2) that a regulation establishing the rate of interest recoverable upon excessive profits is such an appropriate measure calculated to facilitate rapid collection. But the intent of the Congress must be shown in the statute. The circumstance that the power to issue regulations was conferred for such limited purposes as those specified in the applicable statute emphasizes the fact that the Congress intended to give this administrative agency no general power to promulgate regulations.

 Since the statute is unambiguous, the Board has "no power to amend it by regulation." Koshland v. Helvering, 298 U.S. 441, 446–447, 56 S.Ct. 767, 770, 80 L. Ed. 1268. In the regulation the Board attempted to confer upon itself an authority not granted by the statute and thus "beyond the permissible limits of administrative interpretation." Social Security Board v. Nierotko, 327 U.S. 358, 66 S.Ct. 637, 643, 90 L.Ed. 718. In this case the ruling of the Bureau of Internal Revenue and of the National Labor Relations Board that back pay was not subject to social security tax was held by the Supreme Court to go beyond the boundaries of administrative routine although the administrative boards interpreted a term actually included in the statute. In the instant case no words of the applicable statute authorize the imposition of interest under the Renegotiation Act. However, it is settled law that interest may be recovered on money due the Government. Billings v. United States, 232 U.S. 261, 286, 34 S.Ct. 421, 58 L.Ed. 596.

 The fact that the Congress amended the Act at various times after the Board promulgated the regulation, without taking action upon the fixing of interest does not give binding effect to the regulation. The exact point was raised in United States v. Bonnell, supra [180 F.2d 148]. The court declared: "This contention is without merit because the regulations are not an administrative interpretation or construction of provisions in the Act. The Act is silent as to the allowance of interest on the recovery of excessive profits. The most that can be said for congressional re-enactment in the face of these regulations is that it indicated congressional approval of the 6% rate as an administrative guide to the courts in the allowance of interest in the absence of more controlling factors."

 Since the applicable Act establishes no interest rate, and since the regulation is unauthorized and invalid, the court is required to set a rate of interest compensating the Government for the loss of use of money due. This is the long-established rule of the federal courts. As stated in Royal Indemnity Co. v. United States, 313

U.S. 289, 295, 61 S.Ct. 995, 997, 85 L.Ed. 1361:

"A suit upon a contractual obligation to pay money at a fixed or ascertainable time is a suit to recover damage for its breach, including both the principal amount and interest by way of damage for delay in payment of the principal, after the due date. And in the absence of any controlling statutory regulation the trial court is as competent to determine the amount of interest for delay as any other item of damage * * *. Interest upon the principal sum from the date of default, at a fair rate, is therefore an appropriate measure of damage for the delay in payment."

The court also declared: "In the absence of an applicable federal statute, it is for the federal courts to determine, according to their own criteria, the appropriate measure of damage, expressed in terms of interest, for non-payment of the amount found to be due."

■ The rule was explained at some length in Board of Commissioners v. United States, 308 U.S. 343, 60 S.Ct. 285, 288, 84 L.Ed. 313, which involved an ·action brought by the Government on behalf of an Indian to recover sums paid by the Indian as taxes to Jackson County, Kansas. The Supreme Court held that since no federal statute existed requiring the exaction of interest the allowance of interest should be governed by the principles of equity and reversed a judgment allowing interest. The court said:

"* * * In ordinary suits where the Government seeks, as between itself and a private litigant, to enforce a money claim ultimately derived from a federal law, thus implying a wish of Congress to collect what it deemed fairly owing according to the traditional notions of Anglo-American law, this Court has chosen that rule as to interest which comports best with general notions of equity. United States v. Sanborn, 135 U.S. 271, 281, 10 S.Ct. 812, 815, 34 L.Ed. 112; Billings v. United States, 232 U.S. 261, 34 S.Ct. 421, 58 L.Ed. 596. Instead of choosing a rigid rule, the Court has drawn upon those flexible considerations of equity which are established sources for judicial law-making."

■ The Government further contends that since the Ohio statute requires six per cent interest the court abused its discretion in awarding three per cent interest. We think this contention is not established by the record. The Government has not shown that it is not adequately compensated. In the face of this record the Government's contention that interest must be set at six per cent in order to aid rapid recovery of excessive profits is seriously weakened by the fact that the Government delayed more than four years in filing the complaint and that the principal claim was paid within four months after suit was brought. It is not denied that the Government during this period had adequate sources of credit through which it could obtain money at three per cent interest. As the amount of interest was discretionary with the court, the fact that no specific reason for its action is given is immaterial. Cf. Morrison v. Regus, 5 Cir., 22 F.2d 804, 805; Pulaski-Lonoke Drainage Dist. v. Missouri Pacific Ry. Co., 8 Cir., 44 F.2d 899, 901. See also Young v. Potts, 6 Cir., 161 F.2d 597, 601, in which this court held that the fixing of the interest rate at less than the statutory rate of six per cent established in Ohio, § 8305, Ohio General Code, did not amount to an abuse of discretion. Bearing in mind the "flexible considerations of equity" which were declared by the Supreme Court in Board of Commissioners v. United States, supra, to be the test as to the amount of interest fixed in absence of applicable statute, we think the judgment of the District Court on this point must be sustained.

This conclusion is contrary to that reached in United States v. Philmac Mfg. Co., 3 Cir., 192 F.2d 517. An opinion of the Emergency Court of Appeals in Wilson & Co. v. Reconstruction Finance Corporation, Em.App., 194 F.2d 1016, is also relied on by the Government. We consider this case not in point in view of the distinction between the statutes involved and the different factual situation presented. The Emergency Price Control Act of 1942 ex-

pressly authorized the administrator to make terms and conditions for the payments involved. 50 U.S.C.App. § 902(e), 50 U.S.C.A.Appendix, § 902. He is empowered to enforce payment "in such amounts and in such manner and upon such terms and conditions as he determines to be necessary to obtain the maximum necessary production thereof." No such power was granted the War Contracts Price Adjustment Board in the Renegotiation Act. Moreover, the Emergency Court of Appeals held that the acceptance by Wilson & Co. with knowledge of the condition established by the administrator that any overpayment would be returned with four per cent interest constituted an implied agreement upon the part of Wilson & Co. to pay interest for the use of the overpayment. No such circumstance is presented here.

The judgment is affirmed.