**UNITED STATES et al. v. RING CONST. CO.**

Civ. A. No. 2287.

United States District Court
D. Minnesota, Fourth Division.

May 16, 1953.

Philip Neville, U. S. Atty. and Ronald E. Hachey, Asst. U. S. Atty., St. Paul, Minn., for plaintiffs.

Josiah E. Brill, Minneapolis, Minn., for defendant.

NORDBYE, Chief Judge.

This cause came before the Court on plaintiffs' motion for a summary judgment.

Pursuant to the Renegotiation Act of 1942, 56 Stat. 226, 245, 50 U.S.C.A.Appen-

dix, § 1191, the Secretary of War determined that the defendant, Ring Construction Company, had realized excessive profits from war contracts with the United States, and on December 20, 1943, the Secretary entered a unilateral determination of such profits in the net amount of $293,844.24 and demanded their repayment. Defendant immediately filed a petition for redetermination of excessive profits under the provisions of § 403(e)(1) of the Renegotiation Act, as amended. 58 Stat. 21, 78, 50 U.S.C.A.Appendix § 1191. Before the redetermination was made by the Tax Court, however, the Secretary brought suit in this Court on November 7, 1946, to recover the net amount alleged due plus interest at the rate of 6 per cent per annum from the date of demand for repayment. This action was stayed on March 4, 1947, by stipulation between the parties until the Tax Court made its redetermination; security was furnished to the Government by the defendant. On April 6, 1948, the Tax Court entered an order reducing the amount of defendant's excessive profits to a net amount of $210,479.31. Defendant then appealed the decision to the Court of Appeals for the District of Columbia. To stop interest from running, the parties stipulated on July 21, 1948, that defendant would pay the net amount held returnable by the Tax Court under protest, reserving whatever rights defendant might have to recover the sum in the future. Defendant paid the sum of $210,479.31 to the Government and furnished security to protect the Government's claim for interest.

The Court of Appeals decided on November 9, 1949, that the Tax Court's determination was made final by statute and the Court of Appeals had jurisdiction to review only the constitutional questions which defendant raised on appeal. The Court held that the Renegotiation Act was constitutional and dismissed the appeal. Ring Construction Co. v. Secretary of War, 1949, 85 U.S.App.D.C. 386, 178 F.2d 714, certiorari denied, 1950, 339 U.S. 943, 70 S. Ct. 796, 94 L.Ed. 1358. Various phases of the action between the parties pending in this Court have been disposed of by prior orders of this Court dated February 23, 1951 (96 F.Supp. 762), March 29, 1951, May 4, 1951, and June 7, 1951.

Plaintiffs now move for summary judgment on their amended complaint and ask that interest be allowed at the rate of 6 per cent per annum on the following sums: (1) On $293,844.24 from December 21, 1943, after the Secretary of War made his determination, to April 6, 1948, inclusive, when the Tax Court made its redetermination, in the sum of $75,713.97; (2) on $210,479.31 from April 7, 1948, to July 22, 1948, inclusive, when the defendant paid the net amount held returnable by the Tax Court under protest, in the sum of $3,718.48; and (3) on $79,432.45 from July 23, 1948, to the date of payment, inclusive.

Plaintiffs' claim for interest at the rate of 6 per cent is based upon the following points: (1) Congressional policy as evidenced by the Renegotiation Act favors speedy collection of excessive profits, and interest at the rate of 6 per cent is necessary to effect this policy; (2) legislative history of the Act shows that Congress was aware of the War Contracts Price Adjustment Board practice of collecting 6 per cent interest on renegotiation debts; Congress, by refusing to adopt any of the proposed amendments changing the rate, ratified the practice; and (3) to allow interest at any rate lower than 6 per cent per annum would be an abuse of discretion in light of the overwhelming authority favoring the allowance of interest at 6 per cent.

Defendant concedes that interest runs from the time that the amount of excessive profits has been finally determined until payment, but disputes when the amount of indebtedness had been finally determined in this case. Defendant contends that (1) once a petition is filed with the Tax Court there no longer is any determination of the amount of excessive profits because the hearing before the Tax Court is a proceeding de novo; (2) by virtue of the stipulation between the parties on March 4, 1947, it had a right to exhaust all of its remedies before being bound by even the Tax Court's determination of the amount; (3) interest is allowed to compensate a creditor for loss of the use of his money and is a matter of judicial discretion; all

that the Government lost in this case was "something less than 2½ per cent" during the delay in payment because the defendant deposited government bonds for more than the full amount of the claim with only the obligation of the Government to pay interest at less than 2½ per cent.

■ The Renegotiation Act of 1942 did not specifically provide for interest. But a statutory obligation in the nature of a debt bears interest even though the statute creating the obligation fails to provide for it. Billings v. United States, 1914, 232 U.S. 261, 34 S.Ct. 421, 58 L.Ed. 596; Young v. Godbe, 1872, 15 Wall. 562, 82 U.S. 562, 21 L.Ed. 250. Interest is allowed on the principal sum from the date of default as a measure of damage for the delay in payment. Sums due the United States upon renegotiation of war contracts are clearly debts. The contractor owes the United States because the Government has overpaid him. United States v. Bonnell, 9 Cir., 1950, 180 F.2d 145; Sampson Motors v. United States, 9 Cir., 1948, 168 F.2d 878, 879. See United States v. Strontium Products Co., D.C.S.D.W.Va., 1946, 68 F.Supp. 886, 887.

■ Plaintiffs contend that the default in payment of the renegotiation debt occurred on December 21, 1943, after the Secretary of War had made his determination and demand. This contention is sustained by the Renegotiation Act which provides,

§ 403(c)(2) "Upon the making of an agreement, or the entry of an order, under paragraph (1) by the Board, or the entry of an order under subsection (e) by The Tax Court of the United States, determining excessive profits, the Board shall forthwith authorize and direct the Secretaries or any of them to eliminate such excessive profits * * * (D) by recovery from the contractor, through repayment, credit, or suit any amount of such excessive profits actually paid to him; * * *. Actions on behalf of the United States may be brought in the appropriate courts of the United States to recover from the contractor any

amount of such excessive profits actually paid to him and not withheld or eliminated by some other method under this subsection. * * *"

§ 403(e)(1) "* * * The filing of a petition under this subsection [relating to the proceeding de novo before the Tax Court to redetermine excessive profits] shall not operate to stay the execution of the order of the Board [Secretary] under subsection (c)(2)."

The debt is recoverable from the contractor upon the entry of an order by the Secretary determining the excessive profits even though a petition for redetermination is pending in the Tax Court. United States v. Abrams, 6 Cir., 1952, 197 F.2d 803, certiorari denied, 1952, 344 U.S. 855, 73 S.Ct. 93, 97 L.Ed. ——; United States v. United Drill & Tool Co., 1950, 87 U.S. App.D.C. 236, 183 F.2d 998; United States v. Allen Tool Corp., D.C.N.D.N.Y.1951, 112 F.Supp. 882; United States v. Raymond De-Icer Corp., D.C.E.D.N.Y.1949, 96 F. Supp. 14; United States v. Union Concrete Pipe Co., D.C.S.D.W.Va.1950, 93 F.Supp. 650, 651. Here, the debt was recoverable upon entry of the order of the Secretary of War on December 20, 1943. The demand for repayment was made on that date; therefore, the default in repayment occurred on December 21, 1943.

■ The stipulation between the parties on March 4, 1947, merely had the effect of staying the action for collection brought in this Court on November 7, 1946, pending the determination by the Tax Court. The Government's right to collect interest from the date of the Secretary's unilateral determination was expressly reserved in the stipulation. Furthermore, it would not be possible for the parties to change by stipulation the provisions of an Act of Congress providing when the debt was recoverable. Defendant urges consideration of United States v. Star Construction Co., 10 Cir., 186 F.2d 666, as authority for its position that interest never became due on the debt herein up to the time the debt was paid because the amount had not been determined finally. However, the facts of the

Star case are clearly distinguishable. There, the court had to determine whether two individuals were liable as well as the two corporations for the amount due as excessive profits. Also, the question of the tax credits which should be allowed was a matter of determination for the court. The statement of the court on appeal, 186 F.2d at page 669, emphasizes the difference in the factual situation in that case as compared with the instant proceeding. In summarizing its views, the court made the following statement, 186 F.2d at page 669:

"If the net amount due on determination had been a liquidated amount, or, if it was susceptible of being arrived at by computation, then the court in the exercise of its discretion could have awarded interest from the date payment was demanded. But, here, whether the Under Secretary of War was authorized to determine that Rowland and Adams were liable as successors to the corporations for the amount due as excessive profits, whether they were entitled to tax credits, and the proper amount of such tax credits, were all open and sharply disputed questions, and remained so until final judgment in the case. We hold that the amount due on the determination of excessive profits was an indefinite, unliquidated, and disputed claim and that it was arrived at by agreement of the parties and by adjudication by the court and that until such adjudication no interest was due."

Under the facts of the present case, the amount of the excessive profits was liquidated from and after the date when default occurred. Factual issues to be determined by the Court comparable to those in the Star case are entirely absent from the present situation.

■ On what amount should interest be awarded from the date of default— $293,844.24, as unilaterally determined by the Secretary of War, or $210,479.31, as adjudged due by the Tax Court? To allow interest on $293,844.24 would give the Government interest on $83,364.93 which the

Tax Court determined was not due as excessive profits. Obviously, it is not in accord with the equitable nature of interest to compensate a creditor for delay in payment of money to which he is not entitled. Interest will be allowed on $210,479.31 from the date of default, December 21, 1943. It is not necessary to determine what the result would be if defendant had refunded $293,844.24 at the time of the Secretary's determination and the Tax Court then reduced the amount of excessive profits to $210,479.31, since that problem is not in issue here.

The Act of 1942 did not delegate any power to fix the rate of interest to the War Contracts Price Adjustment Board; nor was the Board given any general authority to issue regulations for the enforcement of the Act. The regulations which the Board was authorized to make under the Act of 1942 covered certain limited subjects only. The Board was authorized to prescribe by regulation the financial information required of contractors, § 403(c)(5)(A); to establish by regulation the character of cases to be conducted by the Board and its agencies, § 403(d)(5); and to interpret and apply one specific definition, namely, that of "standard commercial article", § 403(i)(2). However, in 1944 the Board promulgated a regulation which established the rate of interest to be recovered on excessive profits at 6 per cent, 9 Fed.Reg. 12847 (Oct. 26, 1944), and this was reiterated in later promulgations.

■ The fact that Congress amended the Renegotiation Act at various times, after the Board promulgated the regulation regarding interest, without taking action upon the fixing of interest does not give binding effect to the regulation. This exact point was raised in United States v Bonnell, 9 Cir., 180 F.2d 145, 148:

" * * * The Government contends that administrative regulations under the Renegotiation Act providing for 6% interest, plus repeated Congressional amendments and re-enactments of the Act in the face of such regulations, makes the·allowance of 6% interest mandatory. This con-

tention is without merit because the regulations are not an administrative interpretation or construction of provisions in the Act. The Act is silent as to the allowance of interest on the recovery of excessive profits. The most that can be said for congressional re-enactment in the face of these regulations is that it indicated congressional approval of the 6% rate as an administrative guide to the courts in the allowance of interest in the absence of more controlling factors."

The Bonnell holding on this point was approved in United States v. Abrams, 6 Cir., 1952, 197 F.2d 803, certiorari denied, 344 U.S. 855, 73 S.Ct. 93, 97 L.Ed. —; United States v. Edward Valves, Inc., D.C. N.D.Ind.1951, 101 F.Supp. 559; United States v. Hopkins, D.C.N.D.Ohio 1950, 95 F.Supp. 14; contra, United States v. Philmac Mfg. Co., 3 Cir., 1951, 192 F.2d 517.

Plaintiffs contend that 6 per cent interest is necessary to effect the Congressional policy, as evidenced by the Renegotiation Act, in favor of speedy collection of excessive profits. The same argument was made by the Government before the Court of Appeals for the District of Columbia in United States v. United Drill & Tool Co., 1950, 87 U.S.App.D.C. 236, 183 F.2d 998, at page 1001, wherein the court stated:

"The Government also contends that it is entitled to exact a relatively high rate of interest as a coercive measure to force speedy payment of the excessive profits determined under the Act. But this argument overlooks the nature of interest which is compensatory rather than punitive or coercive. We cannot change interest from a means of compensation to a coercive or punitive measure, as the Government urges us to do, unless the statute so provides."

In United States v. Hopkins, D.C.N.D. Ohio 1950, 95 F.Supp. 14, the court granted a summary judgment for the amount of the renegotiation debt plus 3 per cent interest from the date of determination. The Government, on a motion for reconsideration, claimed a right to 6 per cent interest, arguing that "One of the main objectives of the renegotiation statutes is the prompt and efficient collection of renegotiation debts". In disposing of this argument, the court said, 95 F.Supp. at page 16:

"It is undoubtedly true that prompt collection of these debts is one of the primary purposes of the Act. And because it is, Congress provided several methods by which this purpose could be achieved. Suit in a district court is but one of them. It is to be noted that the idea that interest at 6% speeds the collection of these debts originated with the administrative and judicial, and not the legislative, bodies of the Federal Government, and it was only because of judicial discretion that 6% interest was ordered in some cases. The Government, having obtained its end because of exercise of discretion of some district courts, would now have us hold that this discretion no longer exists, and that this court must blindly follow the lead of other courts."

Since the Renegotiation Act of 1942 establishes no interest rate and the War Contracts Price Adjustment Board regulation as to interest is unauthorized and invalid, it is my view that the Court is required to set a rate of interest compensating the Government for the loss of use of money due. A number of cases have dealt with this question of interest on renegotiation debts, but there does not seem to be an "overwhelming authority favoring the allowance of interest at six per cent" as contended by the Government. In some of the cases, interest has been allowed at 6 per cent: United States v. Philmac Mfg. Co., 3 Cir., 1951, 192 F.2d 517; Sampson Motors v. United States, 9 Cir., 1948, 168 F.2d 878; United States v. Frank M. Hill Mach. Co., D.C.Mass.1952, 105 F.Supp. 466; United States v. Allen Tool Corp., D.C.N.D.N.Y.1951, 112 F.Supp. 882; United States v. Corbetta, D.C.S.D.N. Y.1951, 101 F.Supp. 529; United States v. Maguire Industries, Inc., D.C.S.D.N.Y. 1951, 99 F.Supp. 326; United States v.

Wissahickon Tool Works, D.C.S.D.N.Y. 1951, 99 F.Supp. 331; United States v. Union Concrete Pipe Co., D.C.S.D.W.Va. 1950, 93 F.Supp. 650; United States v. Strontium Products Co., D.C.S.D.W.Va. 1947, 71 F.Supp. 475. In others, interest has been allowed at a rate less than 6 per cent: United States v. Abrams, 6 Cir., 1952, 197 F.2d 803, certiorari denied, 344 U.S. 855, 73 S.Ct. 93, 97 L.Ed. —— (3 per cent interest); United States v. Bonnell, 9 Cir., 1950, 180 F.2d 145 (3 per cent interest); United States v. United Drill & Tool Co., 1950, 87 U.S.App.D.C. 236, 183 F.2d 998 (4 per cent interest); United States v. Edward Valves, Inc., D.C.N.D. Ind.1951, 101 F.Supp. 559 (4 per cent interest); United States v. American Metal Co., D.C.N.J.1949, 86 F.Supp. 533 (2½ per cent interest); United States v. Hopkins, D.C.N.D.Ohio 1950, 95 F.Supp. 14 (3 per cent interest); United States v. Clark, D.C. Or.1947, 72 F.Supp. 393 (2½ per cent interest).

The matter is one of judicial discretion—"it is for the federal courts to determine, according to their own criteria, the appropriate measure of damage, expressed in terms of interest, for non-payment of the amount found to be due." Royal Indemnity Co. v. United States, 313 U.S. 289, 296, 61 S.Ct. 995, 998, 85 L.Ed. 1361. The difficulty, however, with the principle, sound as it may be, that federal courts should determine the matter of interest "according to their own criteria" is that it undoubtedly leads to a discriminatory treatment of renegotiation debtors. A reading of the many cases which reflect the variety of views as to what amount of interest is equitable under the circumstances forcibly illustrates the unsatisfactory situation which has prevailed in that respect. Under the circumstances herein, I see no particular purpose in attempting to buttress one's views in defending the orthodox 6 per cent interest rate, or to attempt to explain why it is more reasonable to follow the courts which lean to the view that the Government should not exact a greater interest than the prevailing market rate for money. Congress now for the first time has expressly provided that interest on unpaid renegotiation debts should be 4 per cent. 50 U.S.C.A.Appendix, § 1215(b)(2). That Act was passed in 1951, and of course it is not retroactive and is not binding upon this Court. However, it does reflect the legislative view as to a fair rate of interest on renegotiation contracts promulgated by Congress after the many decisions on the question which reflect such diverse views. Presumably, it is a compromise between the orthodox view of the 6 per cent rate and those who advocate a lesser rate. But it does conform to the Congressional policy to allow interest up to 4 per cent on refunds to contractors who are subject to the Act. See 60 Stat. 622 (1946). In any event, it would seem that a rate of interest to be allowed a citizen should be a fair rate to be allowed to the Government, and upon consideration of all the circumstances herein, I am of the opinion that a 4 per cent rate squares with my views as to an appropriate measure of damages for the delay in the payment of the amount due herein, and in that this conclusion conforms to the legislative expression which now has been enacted, no discriminatory unfairness to future renegotiation debtors should result.

It follows from the foregoing that plaintiffs are entitled to a summary judgment on the question of interest, and interest at the rate of 4 per cent will be allowed on $210,479.31 from December 31, 1943, to July 22, 1948, inclusive, the date of payment, and the same rate of interest will be applied to the interest in default from July 23, 1948, to the date of judgment herein.

It is therefore ordered: That plaintiffs have judgment against the defendant for $38,657.09, 4 per cent interest on $210,479.31 from December 31, 1943, to July 22, 1948, inclusive, and judgment for $7,450.86, 4 per cent interest on $38,657.09 from July 23, 1948, to May 16, 1953, or a total judgment of $46,107.95. Let judgment be entered accordingly.

An exception is reserved.