## UNITED STATES v. ALLEN TOOL CORP.

### Civ. No. 3649.

United States District Court
N. D. New York.

Aug. 29, 1951.

Irving J. Higbee, U. S. Atty., Syracuse, N. Y., for plaintiff.

Fraser Brothers, Syracuse, N. Y. (Henry S. Fraser, Syracuse, N. Y., of counsel), for defendant.

BRENNAN, Chief Judge.

In this action the plaintiff seeks to recover the sum of $5,415.53, with interest from March 9, 1949. The defendant has filed its answer and the cause is at issue.

Defendant moves for a summary judgment dismissing the action. The motion is based upon the pleadings, two affidavits, and certain exhibits. Shortly after the service of the motion papers the plaintiff also moved for a summary judgment for the relief requested in the prayer of the complaint; the motion being upon the pleadings.

The fact that both parties have moved as above set forth does not in itself constitute an admission that there is no material fact issue in this litigation. Begnaud v. White, 6 Cir., 170 F.2d 323, and cases cited at page 327. Neither party, however, urge that such an issue exists here, and the Court finds none. Summary judgment will, therefore, be considered as appropriate without further discussion. The pertinent facts disclosed here will be briefly summarized.

On February 9, 1944, the Acting Secretary of the Navy determined in accordance with the provisions of the Renegotiation Act, 50 U.S.C.A.Appendix, § 1191, that defendant realized excessive profits during the year 1942 in the amount of $100,000. This amount was subject to a tax credit in the sum of $82,163.24, leaving a net excess profit of $17,836.76. Demand was made for the payment of same on or before February 17, 1944. Payment was not in fact made until March 8, 1949, and it is the claim of the plaintiff that interest at 6% accrued during the period from February 17, 1944 to March 9, 1949, in the above amount of $5,415.53, for which a judgment is prayed with interest at six per cent.

There are additional facts found in the pleadings and moving papers which may be properly outlined here before considering the problem before the Court.

Shortly after the receipt of the determination of February 9, 1944, defendant instituted a proceeding in the Tax Court of the United States, pursuant to Section 701

of the Revenue Act of 1943, 26 U.S.C.A. Int.Rev. Acts, page 491, seeking a determination that the Renegotiation Act did not apply to defendant's business during the year 1942; that it had been unlawfully applied against the defendant; that the amount thereof was substantially less than the amount as determined above. The proceeding also challenged the constitutionality of the Renegotiation Act. Defendant also started an action in the District Court for the District of Columbia to enjoin the enforcement of the provisions of the Renegotiation Act pending the determination of the Tax Court proceedings. On May 4, 1944, a stipulation was entered into in the District Court action whereby that action was discontinued, and which further provided for the deposit with the Secretary of the Navy of United States bonds in the amount of not less than $18,000, as security for the payment of the excess profits which might ultimately be found to be due; both parties to maintain the status quo pending the outcome of the proceedings in the Tax Court; interest falling due on the bonds deposited by the defendant during the period of the stipulation to belong to and be paid to the defendant. No mention was made of interest upon the amount of the excessive profits. About April 24, 1946, when the proceeding was about to be reached in the Tax Court and upon consent of the parties to that proceeding all issues therein were waived by the defendant, except the issue as to the constitutionality of the Renegotiation Act, and the proceeding was placed upon the reserve calendar of the Tax Court awaiting the decision of the United States Supreme Court which would settle the issue of constitutionality. On June 14, 1948, the Supreme Court decided the cases of Lichter v. United States, 334 U.S. 742, 68 S.Ct. 1294, 92 L.Ed. 1694, and United States v. Pownall, 334 U.S. 742, 68 S.Ct. 1294, 92 L.Ed. 1694, and held therein that the Renegotiation Act was constitutional. The pending litigation in the Tax Court was thereby rendered moot. Same was dismissed, and the parties here undertook by correspondence commencing the early part of July 1948, to close this particular transaction. On July 30, 1948, the plaintiff, through the Attorney General, for the first time made a demand for the payment of interest upon the excessive profit in the above mentioned amount. Then followed correspondence and negotiations between the parties, which may be summarized by stating that the defendant contended that no interest was due and that the stipulation did not contemplate the accrual or payment of interest. No agreement was reached, and on March 9, 1949, defendant's certified check in payment of the principal amount of $17,836.76 was received by the plaintiff; the security deposited by the defendant in accordance with the stipulation was surrendered, except there was retained a bond in the amount of $5,000 as security for the payment of interest which might be found to be due. The parties were unable to adjust their differences and this action followed.

Reported decisions limit the problem here. Sampson Motors, Inc., v. United States, 9 Cir., 168 F.2d 878, and United States v. Bonnell, 9 Cir., 180 F.2d 145, both hold that the allowance of interest and the rate thereof are within the court's discretion under circumstances existing here. These decisions have been followed without exception up to the present time.

The defendant recognizes the above rule, and urges that under the circumstances no interest should be allowed, or at least it should be at a rate less than that which is normal in commercial transactions. The plaintiff also recognizes the rule as enunciated in the two decisions above, but urges that congressional policy which contemplates the prompt payment of excessive profits is implemented by administrative interpretations and practices so as to constitute legislative ratification. It is true that in Lichter v. United States, supra, 334 U.S. at page 783, 68 S.Ct. 1294, and United States v. Bonnell, supra, 180 F.2d at page 148, administrative practices are discussed but the decisions do not rest thereon. In this case such interpretations and practices do not appear factually in the record and the question will be resolved in accordance with the rule stated in the two authorities cited above.

■ Discretion does not leave a judge free to exercise his personal whim or idea. It is the circumstances and the law, considered and applied to reach a just result, which should control the reason and conscience of the judge. Langnes v. Green, 282 U.S. 531 at page 541, 51 S.Ct. 243, 75 L.Ed. 520.

Interest at a recognized rate ordinarily follows the nonpayment of an indebtedness arising out of contractual relationship expressed or implied. To conclude otherwise is to ignore the law. The rule should apply here unless the circumstances are such as to make its application inequitable. There appears to be no question but that both parties acted in good faith and without undue delay. The defendant doubted its legal liability and with care and deliberation arranged to delay the payment of its indebtedness until its liability was finally established. This it had a right to do. The situation and circumstances are not unlike those encountered in every-day litigation, especially in appellate practice when a stay of execution is desired. Good faith and honest belief in the justness of a cause pervades the greater volume of litigation. They are no more than elements inherent in good citizenship. They are entitled to consideration, but to make them determinative would substitute virtues presupposed to exist, above the law itself.

Defendant's contention that the stipulation invoked the court's discretionary powers is considered. This instrument was entitled in the District Court action for an injunction. Its purpose was to preserve the position of the parties; the defendant's liability was to be determined in the Tax Court. It is, therefore, not surprising that the subject of interest was not mentioned therein. Neither party apparently considered the subject as relevant. It may be that it was overlooked by both parties, but it is evident by the terms of paragraph 9 that neither party intended to make any admission therein that would affect their rights or claims. There is nothing therein to indicate that the defendant was in any way imposed upon or misled.

The ability of the plaintiff to borrow money at a low rate of interest is given weight in some reported cases. Defendant's argument in that regard is not persuasive here. To award interest at an amount equal to that paid by the plaintiff on its borrowings is to eliminate entirely the element of damage occasioned by delay. The credit standing of litigants involves facts or speculation not ordinarily considered. Generally speaking, the legal rate of interest is considered as compensating for delay in payments. To depart from that principle for equitable reasons would involve a scrutiny of each individual transaction and the earning power of money in the hands of the parties.

The cases cited by both parties in support of their contentions have not been overlooked. The court is aware of the fact that the question involved here has been the subject of consideration by the courts. Conclusions have not been entirely uniform but such results are to be expected where facts and circumstances are not entirely similar. Discretion also may not be confined in a rigid mould. Therefore, it is unnecessary and unprofitable to discuss or attempt to distinguish the holdings in the reported cases. Each case depends upon its own peculiar facts and circumstances, and is to be decided by the court's sense of justice within the framework of the law.

■ This decision may be concluded by repeating the statement made above to the effect that here defendant chose to delay payment until its liability was determined, and that there is nothing in the facts or circumstances which would warrant the court in modifying the rules of liability which ordinarily apply. It appears that six per cent is the legal rate of interest both in New York and in the District of Columbia, and, therefore, plaintiff's motion is granted for the relief requested in the prayer of the complaint.