# RING CONST. CORP. v. UNITED STATES.
## No. 50384.

United States Court of Claims.
Feb. 5, 1952.

Josiah E. Brill, Minneapolis, Minn., for plaintiff. Robert A. Littleton, Washington, D. C., on the briefs.

Harland F. Leathers, Washington, D. C., with whom was Asst. Atty. Gen. Holmes Baldridge, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

MADDEN, Judge.

The Government moves to dismiss the plaintiff's petition. We summarize the allegations of the petition, omitting legal arguments and conclusions.

The plaintiff was the successful bidder among competitive bidders for the construction, for the Government, of 490 cantonment buildings at Camp McCoy, Wisconsin. It thereupon made a contract with the Government dated March 26, 1942. It was to furnish all material, pay for all

labor and complete the work within 180 days, and be subject to liquidated damages of $15 per day per building for delay in completion. The contract could be terminated at any time by the Government in its discretion. The contract, as later modified by change orders, called for payment to the plaintiff of $6,838,412.21 for the work. On October 3, 1942, the plaintiff obtained, again by competitive bidding, a similar contract for additional buildings at Camp McCoy, the contract price being $80,575.

Both contracts were completed in due course, and the plaintiff was paid the agreed amounts. The plaintiff had created an usually efficient organization to do the work, and had made agreements with two able executives, giving them a financial incentive for efficient work. The prices bid by the plaintiff included a ten per cent hoped-for profit, but under the contract the plaintiff bore all the risks of loss, if circumstances should cause a loss. The plaintiff's gross profit on the contracts was $1,982,715.99, which, after the payment of administrative expenses and taxes, left the petitioner $292,611.14. The amounts due the plaintiff under the contract were determined in 1942, and all but $352,384.66 was paid to it in that year. The latter sum was paid to it in 1943.

On April 28, 1942, Congress enacted Public Law 528, 77th Congress, 2nd Session, Section 403, 50 U.S.C.A.Appendix, § 1191, whereof provided for the renegotiation of prices of contracts thereafter made. This Act did not apply to the plaintiff's larger contract described above, which had been made shortly before the Act was passed. Section 403 was amended by Title VII, Section 801 of the Revenue Act of 1942, approved October 21, 1942, Public Law 753, 77th Congress, 2nd Session. On July 14, 1943, Public Law 149, 78th Congress, 1st Session, was adopted, 57 Stat. 564. It purported to subject the plaintiff's contracts to renegotiation retroactively.

On December 20, 1943, the Under Secretary of War, in spite of the plaintiff's protests as to the unconstitutionality of Public Law 149, and as to its inapplicability to the plaintiff's contracts, made a unilateral determination that the plaintiff should refund $1,365,000 to the Government as excessive profits on the two contracts.

Congress enacted Title VII, Section 701 of the Revenue Act of 1943, effective February 25, 1944, Public Law 235, 78th Congress, 2nd Session. Section 701 (e) (2) required contractors dissatisfied with a unilateral determination in a renegotiation proceeding to initiate a proceeding in the Tax Court of the United States for a *de novo* determination of the amount, if any, of their alleged excessive profits. The plaintiff initiated such a proceeding in the Tax Court, which, on May 15, 1947, decided all questions of the constitutionality and applicability of the renegotiation laws adversely to the plaintiff and, on March 23 and April 6, 1948, entered orders adjudging the plaintiff to be indebted to the Government in the sum of $1,208,965.13, less credits for taxes as provided by Section 3806 of the Internal Revenue Code, 26 U.S.C.A. § 3806.

The plaintiff sought an appellate review of the decision of the Tax Court by the United States Court of Appeals for the District of Columbia, but obtained no relief there. While its appeal proceeding was pending, it paid the sum determined by the Tax Court, which, after credit for taxes, was $210,479.31. This reduced the plaintiff's economic benefits from the performance of its contracts to practically nothing. The Tax Court did not apply proper rules of substantive or procedural law in the proceedings before it. The plaintiff has exhausted all administrative remedies.

The Government, to enforce the unilateral determination made by the Under Secretary of War against the plaintiff, brought a civil action against the plaintiff in the United States District Court for the Fourth Division of the State of Minnesota. After the decision by the Tax Court that the plaintiff was indebted to the Government in the sum of $1,208,965.13 less credit for taxes, the plaintiff, on July 21, 1948, paid to the Government $210,479.31, which was the correct amount as computed by the parties. Upon the payment of this sum the parties agreed that it should be regard-

ed as paid under protest with the reservation of whatever rights, if any, the plaintiff might have in the future to recover it, or any part of it. The stipulation was made with the intention that the plaintiff should still have its day in court in the suit then pending in the District Court in Minnesota, wherein it attacked the constitutionality of the Renegotiation Acts, and asserted its right to judicial review of the decision of the Tax Court. But the Government dismissed its suit against the plaintiff in the District Court in Minnesota, so far as the principal sum involved was concerned, leaving only the question of interest in litigation. The dismissal was approved by the District Court. Because the amount claimed by the plaintiff was more than $10,000, the District Court had no jurisdiction to give plaintiff a judgment for the recovery of the amount it had paid. Wherefore the plaintiff sues in this court.

The basis of plaintiff's claim is that $210,479.31 which it had lawfully acquired by performing its contracts with the Government has been taken from it by the Government; that the Renegotiation Act by which it was taken is unconstitutional, at least as applied to the plaintiff's contracts, or is, when properly construed, inapplicable to them; that in any event the plaintiff is entitled to its day in court to prevent the Government from taking the money, or to get it back; that its only right to a hearing under the Renegotiation Acts was to the hearing in the Tax Court, an executive agency; that the attempt of Congress to limit it to such a hearing was unconstitutional; and that therefore it has a right to sue in this court on the theory that its money was taken and the Government has impliedly promised to pay it back.

As to the basic constitutionality of the Renegotiation Acts, that question is not open. The decision of the Supreme Court of the United States, and the opinion of that court delivered by Mr. Justice Burton, in Lichter v. United States, 334 U.S. 742, 68 S.Ct. 1294, 92 L.Ed. 1694, leave no room for doubt as to the right of the Government to recover excessive profits made on wartime contracts with the Government by the method laid down by Congress in the Renegotiation Acts. The opinion expressly covers the situation, presented by the plaintiff's case, of contracts made before the enactment of the Acts, but in which final payment had not been made when they were enacted. The plaintiff says that the Lichter case involved a subcontractor, rather than a prime contractor with the Government as the plaintiff was. That is true, and the court so stated, 334 U.S. at page 788, 68 S.Ct. at page 1318 of its opinion. But it did not intimate, and we can think of no reason why it should be held, that if the Government could lawfully apply renegotiation to subcontractors who were in no relation to it, it could not apply it to prime contractors. We agree with the views of the United States Court of Appeals for the District of Columbia, in its decision involving the present plaintiff, Ring Construction Corporation v. Secretary of War, 85 U.S.App.D.C. 386, 178 F.2d 714, that the subcontractor would seem to be in a stronger position, if his position is different at all, to attack the constitutionality of renegotiation, than the prime contractor. We accept, therefore, the basic constitutionality of the Renegotiation Acts.

The next question is whether the procedure prescribed by Congress in the Renegotiation Acts is sufficient to satisfy due process of law. If a mutually satisfactory agreement cannot be reached, the Secretary of the Department concerned is required to make a unilateral determination of the amount of excessive profits, as he did in the plaintiff's case. Then, according to the statute, the contractor if dissatisfied may within a specified time petition the Tax Court for a de novo determination of the question. This the plaintiff did. In the Lichter case, supra, the Supreme Court held that a contractor who did not resort to the Tax Court could not assert in defense of a suit by the Government against him in a District Court of the United States for the amount unilaterally determined to be owing by him, that his con-

tracts were not subject to renegotiation, or that the amount determined by the Secretary to be owing by him was excessive. A summary judgment against him was held to have been properly awarded. Thus the Lichter case forecloses any doubt as to whether a contractor must seek the remedy in the Tax Court which Congress has provided for him. Hickey v. United States, 88 F.Supp. 888, 116 Ct.Cl. 241. The plaintiff in the instant case did pursue that remedy, and obtained some relief, since the Tax Court reduced substantially the Secretary's award. The plaintiff says that it still has not had its day in court, because the Tax Court is an executive agency. In the Lichter case, supra, the Supreme Court, 334 U.S. at page 791, 68 S.Ct. at page 1319, expressly reserved judgment as to what finality the Tax Court's determination would have had, if the contractor there had resorted to the Tax Court. The plaintiff says that that question is still open, and it seems to be so, so far as the Supreme Court is concerned.

■ If a contractor has exhausted the remedies granted by the Renegotiation Acts, by obtaining review in the Tax Court, and if he thinks that the Tax Court's decision was wrong, as the plaintiff does, and if, as the plaintiff asserts, Congress' attempt to make that tribunal's determination final is unconstitutional and he is still entitled to his day in court, what court is he entitled to have his day in? That would seem to depend upon how his accounts with the Government stand. If the Government has paid itself, by deducting the asserted excessive profits from his payments on the contract or some other transaction, it is obviously the contractor's move to find the proper court, if any, and initiate a suit against the Government. Whether such a claim could be pursued in this court, or in a District Court if the amount were proper, under the Tucker Act, 28 U.S.C.A. §§ 1346, 2401, 2402, we of course do not intimate. But where a contractor, after the Tax Court's determination still has, as the plaintiff had in this case, the money in his own possession, then it is the Government's move. The Tax Court has no machinery to collect for the Government the money which it has determined to be due. The Government, then, must sue the contractor, as it did sue the plaintiff in the District Court in Minnesota. The District Court is then faced with the problems which the plaintiff says are open, under the Lichter decision. Is the Tax Court's determination final, as Congress said it should be? The Government will move for summary judgment, and get it, if the contractor cannot persuade the District Court that the attempt of Congress to make the Tax Court's decision final is unconstitutional. If the court thinks the Tax Court's decision is not final, to what extent is it reviewable? Will the review be *de novo,* or only to determine whether the Tax Court's decision has substantial evidence to support it? Or will it be only on questions of law?

■ However the court may answer these questions, a contractor in the position the plaintiff was in when the Tax Court's decision was made is in a perfect position to raise them and have them decided, and have appellate review of them if he so desires. The plaintiff being in a position to have his day in the District Court in Minnesota, abandoned that defensive position by paying the Government on July 21, 1948 the $210,479.31 determined by the Tax Court to be owing to the Government. This was done under protest, and with an agreement on the part of the Government permitting the plaintiff to reserve whatever rights, if any, it had to recover the money or any part of it from the United States. This stipulation was approved by the District Court. Thereafter, on May 4, 1950, the plaintiff filed an amended answer in the District Court, asking that court to determine, for substantially the same reasons given in its petition in this court in the instant case, that the Government recover nothing from it, but that it recover from the Government the $210,479.31 which it had paid. The Government thereupon made a motion to dismiss the counterclaim, one of the grounds of the motion being that it exceeded $10,000 in amount, and was therefore beyond the District Court's jurisdic-

tion under Section 1346(a) (2) of the Judicial Code, 28 U.S.C.A. § 1346(a) (2). The District Court dismissed the counter-claim upon this ground, holding that the stipulation referred to above could not confer jurisdiction upon the District Court in a case not within the limits of its statutory jurisdiction, upon the ground that the Tax Court's decision was final, having been made so by the Renegotiation Act which, the court held, was constitutional in this regard, and upon the ground that the decision of the Court of Appeals for the District of Columbia, rendered upon the plaintiff's appeal from the decision of the Tax Court, was *res adjudicata*. Judge Nordbye wrote an able and thoughtful opinion. D.C., 96 F.Supp. 762.

In the meantime, on November 8, 1950, before the court rendered its decision the Government had dismissed its suit against the plaintiff, as to the principal sum involved, and continued it only insofar as it claimed interest up until the time the plaintiff paid the principal sum.

On March 3, 1951, the plaintiff made a motion requesting the District Judge to clarify its order dismissing the counter-claim by making it say, in substance, that the counterclaim was dismissed only for want of jurisdiction, and without prejudice. The District Court on March 29, 1951, made an explanatory order in which it said that its dismissal of the counter-claim, so far as the counterclaim sought affirmative relief against the Government, was for lack of jurisdiction, but that its dismissal, so far as the counterclaim was asserted as a defense against the Government's right to recover from the plaintiff, was based on the ground that the court had no power to review the decision of the Tax Court, and that the issue was *res adjudicata* because of the decision of the Court of Appeals of the District of Columbia.

The District Court in Minnesota thus decided the very issues which we might regard as still open for decision (1) the reviewability of the Tax Court's determination, which is the question of the constitutionality of the mandate of Congress that the Tax Court's determination should be final and (2) the finality of the decision of the Court of Appeals of the District of Columbia. The District Court's decision would make the case a *res adjudicata* but for one circumstance. Before the District Court's decision, the Government had, as we have seen, amended its complaint against the plaintiff and eliminated its claim for the principal sum originally sued for, since that principal sum had been paid. The amended complaint still sought interest on the principal sum to the date of its payment. The defenses which the plaintiff had pleaded to the claim for the principal sum and interest, before the principal sum was paid, were still the defenses against the claim for interest. Those defenses were, the unconstitutionality of the Renegotiation Act, its inapplicability to the plaintiff's contracts and error in the Tax Court's determination. When the District Court held that the counterclaim was invalid, on the legal merits, as a defense, the court decided the very same legal issues which the plaintiff would have us decide. But the plaintiff wants us to decide them as to the principal sum of $210,479.31, whereas the District Court decided them as to interest. The splitting of the cause of action by the plaintiff, by reason of its having paid the principal, with the reservation noted above, but continuing to contest liability for interest, creates a problem. If the plaintiff should succeed in the instant suit it would mean that this court had given the plaintiff a judgment for money which the District Court had decided it must pay interest on because it owed the money to the Government.

We have serious doubts as to whether a litigant, being in court as a defendant and having a complete opportunity to present all his defenses both factual and legal, may abandon that position by voluntarily paying the amount claimed, reserving a right to recover it, and then go into another court as plaintiff and sue for the amount which he has paid. We can think of only two reasons for his doing so. One is the desire to prevent the accrual of interest. That reason would not have been very strong in the instant case, since the plain-

tiff had already deposited interest-bearing United States bonds to secure the payment of any judgment which might have been rendered against it, and the interest accruing on those bonds would offset, *pro tanto,* whatever interest might accrue against it before the litigation was terminated. The other reason for such action would be that it desired to transfer their litigation to a more favorable forum.

The Tax Court, 8 T.C. 1070, having determined that the plaintiff was indebted to the Government in the sum of $210,479.31 as excessive profits, the plaintiff, as we have seen, petitioned the United States Court of Appeals for the District of Columbia for a review of the Tax Court's decision. The Court of Appeals, 85 U.S. App.D.C. 386, 178 F.2d 714, held that the Renegotiation Act was constitutional, as applied to the plaintiff's contracts; that the Tax Court had, under the statutes, exclusive and unreviewable jurisdiction to determine the amount of excessive profits, and to decide all questions of both fact and law involved in that determination. The decision of the Court of Appeals completely disposed of the questions which the plaintiff would have us decide. It was a decision that the Tax Court's determination that the plaintiff was indebted to the Government in the sum of $210,479.31 was final. The Supreme Court of the United States denied *certiorari,* 339 U.S. 943, 70 S. Ct. 796, 94 L.Ed. 1358. The United States District Court in Minnesota, in the litigation discussed above, held that the decision of the Court of Appeals made the matter *res adjudicata.*

The plaintiff says that the decision of the Court of Appeals has not rendered the matter *res adjudicata* because that court had no jurisdiction to entertain the case. It will be remembered that it was the plaintiff itself which invoked that court's jurisdiction. As to whether the Courts of Appeals have any jurisdiction to review the determinations of the Tax Court in renegotiation cases, there is a conflict of authority. In U. S. Electrical Motors, Inc., v. Jones, 80 U.S.App.D.C. 329, 153 F.2d 134, Blanchard Machinery Co. v. R. F. C. Price Adjustment Board, 85 U.S.App.D.C. 361, 177 F.2d 727, and Ring Construction Co. v. Secretary, 178 F.2d 714, the Court of Appeals for the District of Columbia has held that the Courts of Appeals have jurisdiction to review the determinations of the Tax Court in renegotiation cases, as to the constitutionality of the statute and the jurisdiction of the Tax Court. The Court of Appeals for the Ninth Circuit has held, French v. War Contracts Price Adjustment Board, 9 Cir., 182 F.2d 560, that the Courts of Appeals have no jurisdiction at all in such cases.

Judge Nordbye, in the District Court phase of the instant controversy, said 96 F.Supp. at page 762, that the Court of Appeals had considered the question of its jurisdiction and had decided that it had jurisdiction, and that such a decision is *res adjudicata.* He relied on the decision of the Supreme Court of the United States in Stoll v. Gottlieb, 305 U.S. 165, at page 172, 59 S.Ct. 134, at page 137, 83 L.Ed 104, in which, Mr. Justice Reed said, for the court: "After a Federal court has decided the question of the jurisdiction over the parties as a contested issue, the court in which the plea of *res judicata* is made has not power to inquire again into that jurisdictional fact. We see no reason why a court in the absence of an allegation of fraud in obtaining the judgment, should examine again the question whether the court making the earlier determination on an actual contest over jurisdiction between the parties, did have jurisdiction of the subject matter of the litigation." The District Judge cited Dowell v. Applegate, 152 U.S. 327, 340, 14 S.Ct. 611, 38 L.Ed. 463, for a similar holding with reference to jurisdiction over the subject matter, the contention in that case being that, since no federal question was involved, the Federal court had no jurisdiction to make its decision.

The plaintiff urges that the fact that the Court of Appeals of the District of Columbia concluded its decision with the words "Ring's petition to review the Tax Court's judgment is therefore dismissed," shows that the Court of Appeals did not take jurisdiction and decide the case. Judge Nordbye, at page 770 of 96 F.Supp. shows

that in other cases where the same Court of Appeals had given similar consideration to such renegotiation cases it had concluded its decision with the word "affirmed" and that the difference in language was not significant. We agree.

Our conclusion is that the decision of the Court of Appeals of the District of Columbia that the determination of the Tax Court was final made the fact of the plaintiff's indebtedness to the United States a *res adjudicata*. That being so, the plaintiff, having paid the indebtedness, has no right to recover the payment.

The Government's motion to dismiss the petition will be granted, and the petition will be dismissed.

It is so ordered.

JONES, Chief Judge, and HOWELL and WHITAKER, Judges, concur.

LITTLETON, Judge, took no part in the decision of this case.