**RING CONST. CORP.**
v.
**UNITED STATES et al.**

**UNITED STATES et al.**
v.
**RING CONST. CORP.**

Nos. 14886, 14962.

United States Court of Appeals,
Eighth Circuit.

Jan. 26, 1954.

Josiah E. Brill, Minneapolis, Minn., for Ring Const. Corp.

Harland F. Leathers, Attorney, Department of Justice, Washington, D. C. (Warren E. Burger, Asst. Atty. Gen., George E. MacKinnon, U. S. Atty., Alex Dim, Asst. U. S. Atty., and Melvin Richter, Attorney, Department of Justice, Washington, D. C., on the brief), for United States of America, et al.

Before SANBORN, WOODROUGH and JOHNSEN, Circuit Judges.

WOODROUGH, Circuit Judge.

The United States of America and Robert P. Patterson, Secretary of War, brought this action as plaintiffs under the provisions of the Renegotiation Act of 1942, as amended, 50 U.S.C.A.Appendix, § 1191,[1] seeking to recover from Ring Construction Corporation as defendant excessive profits allegedly received by defendant on certain war contracts. Kenneth C. Royall, Secretary of the Army, was later substituted as party plaintiff in the place of Robert P. Patterson, Secretary of War. The final judgment of the District Court, 113 F. Supp. 217, awarded the government a recovery for interest only as the principal debt of the defendant had been paid to the government prior to the date of judgment. Defendant Ring Construction Corporation appeals from the judgment awarding interest. The government has also appealed, contending that the 4 percent rate of interest awarded was erroneous.

On December 20, 1943, the Secretary of War made a unilateral determination that defendant had realized excessive profits in the sum of $293,844.24 from its two war contracts with the United

---

1. The provisions of the Renegotiation Act pertinent to this appeal are as follows:

"Sec. 403(c) (1) Whenever, in the opinion of the Secretary of a Department, the profits realized or likely to be realized from any contract with such Department, or from any subcontract thereunder whether or not made by the contractor, may be excessive, the Secretary is authorized and directed to require the contractor or subcontractor to renegotiate the contract price. * * *

"(2) Upon renegotiation, the Secretary is authorized and directed to eliminate any excessive profits under such contract or subcontract * * *

"(iv) by recovery from the contractor or subcontractor, through repayment, credit or suit, of any amount of such excessive profits actually paid to him; * * *

"(6) This subsection (c) shall be applicable to all contracts and subcontracts hereafter made and to all contracts and subcontracts heretofore made, whether or not such contracts or subcontracts contain a renegotiation or recapture clause, unless

"(i) final payment pursuant to such contract or subcontract was made prior to April 28, 1942".

Sec. 403(e) Renegotiation Act of 1943, retroactive to date of 1942 Act.

"(1) Any contractor or subcontractor aggrieved by an order of the Board determining the amount of excessive profits received or accrued by such contractor or subcontractor may, within ninety days * * * after the mailing of the notice of such order under subsection (c) (1), file a petition with The Tax Court of the United States for a redetermination thereof. Upon such filing such court shall have exclusive jurisdiction, by order, to finally determine the amount, if any, of such excessive profits received or accrued by the contractor or subcontractor, and such determination shall not be reviewed or redetermined by any court or agency. * * * A proceeding before the Tax Court to finally determine the amount, if any, of excessive profits shall not be treated as a proceeding to review the determination of the Board, but shall be treated as a proceeding de novo. * * * The filing of a petition under this subsection shall not operate to stay the execution of the order of the Board under subsection (c) (2)."

States government and demanded repayment of that amount. The payments under both contracts were made after the effective date of the Renegotiation Act. Defendant filed timely petition in the Tax Court seeking a redetermination of excessive profits. On November 7, 1946, while the suit in the Tax Court was still pending, the government commenced this action in the District Court for the District of Minnesota, seeking judgment for $293,844.24, with interest at 6% from December 20, 1943. On October 21, 1947, pursuant to a stipulation by the parties and with the permission of the court, the action in the District Court was suspended "until there shall have been a final determination of the proceeding now pending in the Tax Court of the United States * * *." The stipulation provided that defendant would deposit $350,000.00 in government bonds in the Northwestern National Bank of Minneapolis as security pending final determination of the action. The stipulation further recited:

"4. That the above entitled Court [District Court] shall retain jurisdiction of this action for the purpose of enforcing the terms of this stipulation * * *.

"5. That it is especially understood and agreed that, the plaintiffs having alleged that they are entitled to interest on their claim from the date of the so-called 'unilateral determination', the defendant denies the right of plaintiffs to any interest except, and until, there shall have been a determination of the amount of 'excessive profits' by the Tax Court of the United States; that neither party waives its claim with respect to the said matter of interest and that both parties agree that said matter will be determined by The Tax Court of the United States, or by either a Circuit Court of Appeals of the United States or by the Supreme Court of the United States, and that the question of interest shall abide such final determination and that the deposit by the defendant of bonds sufficient in amount to pay interest on the theory of the plaintiffs shall not be taken to be an admission by the defendant of the validity of such claim and theory on the part of the plaintiffs with respect to the matter of interest."

On April 6, 1948, the Tax Court rendered its decision allowing the government to recover $210,479.31 as excessive profits from defendant. 8 T.C. 1070. Defendant prosecuted an appeal to the Court of Appeals for the District of Columbia. That Court of Appeals passed only on the question of constitutionality, as the Act provides that the determination of the Tax Court is final and not subject to appeal. The court held that the Act, as applied retroactively to a contract entered into before the passage of the Act but payment on which was made after its enactment, was not unconstitutional. Ring Construction Corp. v. Secretary of War of United States, 85 U.S.App.D.C. 386, 178 F.2d 714, certiorari denied, 339 U.S. 943, 70 S.Ct. 796, 94 L.Ed. 1358.

On July 23, 1948, while the appeal from the decision of the Tax Court was pending, defendant paid the government, under protest, the amount awarded by the Tax Court, $210,479.31, pursuant to a stipulation which provided, in part, as follows:

"2. As to those bonds not required to be sold as provided in paragraph 1 hereof, the Northwestern National Bank of Minneapolis shall retain such of them as will aggregate $61,000 in face value and is authorized and directed to return the balance of said bonds to the defendant.

"3. In the event the question of whether or not, and to what extent, if any, the plaintiffs are entitled to interest on defendant's renegotiation liability, if any, for excessive profits for its fiscal year ended December 31, 1942, is not decided on any review of the Tax Court's determination of excessive profits, said question of interest shall be decided by this court in this proceeding subject to appeal by either party.

"4. Except as necessarily modified by this present stipulation and agree-

ment, the stipulation of the parties entered into under date of March 4, 1947, shall continue in full force and effect."

On May 11, 1950, defendant filed an amended answer and counterclaim in which it sought to recover the $210,479.-31 it had paid to the government. The government moved to dismiss the counterclaim on the ground that it was beyond the jurisdiction of the District Court under Sec. 1346(a) (2) of the Judicial Code, 28 U.S.C.A. § 1346(a) (2). The District Court on February 23, 1951, dismissed the counterclaim for the reason alleged in the motion and also upon the ground that the decision of the Court of Appeals for the District of Columbia, on appeal from the ruling of the Tax Court, was res adjudicata. 96 F.Supp. 762. Defendant thereupon commenced an action in the Court of Claims to recover the $210,479.31. The Court of Claims denied the relief prayed for and granted the government's motion to dismiss, on the same grounds that the District Court had relied on in granting the motion submitted to it. Ring Construction Corp. v. United States, 102 F.Supp. 569, 121 Ct.Cl. 604, certiorari denied, 343 U.S. 953, 72 S. Ct. 1046, 96 L.Ed. 1353.

In the meantime the parties, by stipulation dated November 8, 1950, agreed that the government be permitted to file an amended complaint in order to "set forth its claim that the defendant has paid the principal amount of alleged excessive profits claimed to be due the plaintiff, but without interest * * *". Thereafter the government filed an amended complaint in which payment of the principal was alleged and recovery of interest only on defendant's renegotiation liability was sought. Defendant's answer asked dismissal of the amended complaint and also set up the counterclaim referred to above. After defendant's formal motion to dismiss was denied, the government on May 16, 1953, was granted a summary judgment in the amount of $46,107.95, computed as follows: 4% interest on $210,479.31 from December 21, 1943,

to July 22, 1948, amounting to $38,657.-09, and 4% interest on $38,657.09 from July 23, 1948, to May 16, 1953, or a total of $46,107.95.

On this appeal defendant contends (1) that the trial court erred in denying its motion to dismiss the government's amended complaint, and (2) the court erred in awarding the government interest on defendant's renegotiation liability. The government on cross-appeal contends that the court erred in awarding interest at a rate less than six percent.

[1,■] It is argued that because interest on a renegotiation liability claim is allowed by way of damages for delay in payment of a debt and is not based on any contractual obligation, the government's acceptance of the principal sum due and the subsequent dismissal of the action as to that portion of the claim effectively terminated its right to sue for interest. Or, stated in another way, a separate suit for interest, as damages, cannot be maintained where the principal debt has been paid. That such is the general rule can hardly be denied. However, a well-established exception to this rule is where the parties agree that acceptance of the principal will not constitute a bar to a suit for interest. See the many cases cited in 100 A.L.R. 120. The trial court found that such an agreement existed in the present case and upon examination of the record we sustain that finding.

The stipulation entered into on July 21, 1948, when defendant paid over the $210,479.31, specifically provided that if the question of interest "is not decided on any review of the Tax Court's determination of excessive profits, said question of interest shall be decided by this Court in this proceeding subject to appeal by either party". Defendant's amended answer, filed May 11, 1950, contains allegations that " * * * the Northwestern National Bank of Minneapolis retained in its possession sufficient securities to protect the plaintiff in its claim for interest, and one of the purposes of this amended answer is to

obtain a determination by this Court as to whether or not the plaintiff is entitled to any interest, and if so, how much." It further alleged that the government should not be allowed more than 3% interest, if any, on defendant's renegotiation liability. In its prayer defendant asked, "(b) That if the Court shall determine that the defendant is not entitled to recover from the plaintiff in this action, that the Court fix the amount of interest to be paid by the defendant to the plaintiff." In the stipulation of November 8, 1950, consenting that plaintiffs amend their complaint, it was agreed,

"2. One of the purposes of the plaintiff is to set forth its claim that the defendant has paid the principal amount of alleged excessive profits claimed to be due the plaintiff, but without interest, * * *.

"3. It is understood that the defendant shall not be deemed to have waived the claim that the Court in the above entitled action has the right and duty to pass upon all of the issues raised by the defendant's Amended Answer."

After the government amended its complaint to show payment of the principal, defendant filed an answer in which it "realleges each and every allegation set forth in its * * * Amended Answer * * *", and in which it asked the court to determine the question of interest. Not until March 6, 1951, in its motion to dismiss, did defendant claim that the government had lost the right to sue for interest. We think there was adequate evidentiary basis for the court's finding that "the parties at all times intended to reserve to the government the right to collect interest notwithstanding the payment of the principal amount due." Defendant's motion to dismiss the amended complaint was properly denied.

▉ Defendant's further contention on this appeal is that the court erred in awarding interest on defendant's renegotiation liability. It is further contended that if the allowance of interest was proper, the court erred in awarding interest from December 21, 1943, the date of the unilateral determination by the Secretary of War.

It is no longer open to dispute that the government is entitled to recover interest on repayments made under the Renegotiation Act, notwithstanding the absence of any express provision in the Act to that effect. Sampson Motors, Inc., v. United States, 9 Cir., 168 F.2d 878; United States v. Bonnell, 9 Cir., 180 F.2d 145; United States v. United Drill & Tool Corp., 1950, 87 U.S.App.D.C. 236, 183 F.2d 998; United States v. Philmac Mfg. Co., 3 Cir., 1951, 192 F.2d 517.

Defendant argues that the amount of excessive profits recoverable by the government was not finally determined until the decision of the Tax Court was rendered on April 6, 1948, and that interest should not have been allowed prior to that date. Further, that under the holding in United States v. Star Construction Co., 10 Cir., 186 F.2d 666, the unilateral determination entered by the Secretary of War on December 20, 1943, did not of itself make the claim a liquidated demand capable of drawing interest. But the Star case involved issues not found in the present suit. In that case the court, 186 F.2d at page 669, said,

"* * * whether the Under Secretary of War was authorized to determine that Rowland and Adams were liable as successors to the corporations for the amount due as excessive profits, whether they were entitled to tax credits, and the proper amount of such tax credits, were all open and sharply disputed questions, and remained so until final judgment in the case. We hold that the amount due on the determination of excessive profits was an indefinite, unliquidated, and disputed claim * * * and that until such adjudication no interest was due."

In the present case there was no dispute as to who was liable, nor were there any disputed tax credits involved.

Here we have a demand for a definite sum which could have been collected by suit at any time after December 21, 1943, as provided by Sec. 403(c) (2) of the Act. The reason why interest begins to run on the date of demand in renegotiation liability cases is succinctly stated in United States v. United Drill & Tool Corp., supra [87 U.S.App.D.C. 236, 183 F.2d 1000], where the court said,

"Sums due the United States upon renegotiation of contracts are clearly debts. The contractor owes the United States because the United States has overpaid him. Interest therefore runs from the date upon which the contractor fails to make repayment, after proper notice."

United States v. Allen Tool Corp., D.C. N.D.N.Y., 112 F. Supp. 882; United States v. Union Concrete Pipe Co., D.C., 93 F.Supp. 650. This is true even though the liability is unilaterally determined. United States v. Philmac Mfg. Co., supra, and cases cited therein. We hold that the decision of the trial court allowing interest from December 21, 1943, was without error.

Both parties have appealed from the ruling of the court allowing interest at 4% on defendant's renegotiation debt. Defendant contends that the rate should not have been more than about 2¼%, while the government argues that it should have been set at 6%.

Defendant says that since interest is given by way of damages for depriving the one entitled to use of money, it was improperly awarded in this case because defendant purchased government bonds as security for the debt and therefore the government was not denied the use of the money; that since the government paid only 2¼% interest on its borrowings, its damages could not exceed that amount. This argument is unsound for two reasons. The bonds were not deposited until March, 1947, and the government was denied the use of the money until that date. Even after that date defendant continued to collect the coupons on the bonds so that at no time was the money under the exclusive control and possession of the government. Defendant's argument also overlooks the element of damages for delay in payment, which is the primary reason for awarding interest in these cases. This same argument was advanced in United States v. Allen Tool Corp., supra, where the defendant had also deposited government bonds as security for payment of a renegotiation liability. The court in rejecting defendant's contention said: "To award interest at an amount equal to that paid by the plaintiff on its borrowings is to eliminate entirely the element of damage occasioned by delay. The credit standing of litigants involves facts or speculation not ordinarily considered." [112 F.Supp. 884.] We are not persuaded the court erred in allowing interest at a rate in excess of 2¼%.

The government argues that interest should have been allowed at 6% instead of 4% because: (1) The 6% interest rate is mandatory, or (2) if discretionary, any award less than 6% is an abuse of discretion.

Admittedly, the Renegotiation Act itself contains no provision respecting the allowance of interest or the rate thereof. The government contends that the War Contracts Price Adjustment Board, the agency selected to administer the Act, was given broad enforcement powers and in 1944 promulgated administrative regulations providing that interest accrued at the rate of 6% on renegotiation debts remaining unpaid after the date contained in the unilateral determination and demand; that Congress, having cognizance of said regulations, repeatedly amended the Act and failed to fix a different interest rate, thereby giving the regulations the binding force of law. In passing on this exact issue, the court in United States v. Bonnell, supra, [180 F.2d 148] said, "This contention is without merit because the regulations are not an administrative interpretation or construction

of provisions in the Act. The Act is silent as to the allowance of interest on the recovery of excessive profits. The most that can be said for congressional re-enactment in the face of these regulations is that it indicated congressional approval of the 6% rate as an administrative guide to the courts in the allowance of interest in the absence of more controlling factors." See also United States v. Abrams, 6 Cir., 1952, 197 F.2d 803, certiorari denied, 344 U.S. 855, 73 S.Ct. 93, 97 L.Ed. 664. In holding that the 6% interest rate is not mandatory we do not follow the decision in United States v. Philmac Mfg. Co., supra, to the contrary.

The government further contends that if the 6% rate is not mandatory, it is an abuse of discretion for a court to award a lesser rate in view of the regulations referred to above and because of the prevailing local interest rate.[2] It is true that some courts, although holding the matter is within the discretion of the court, have followed the administrative ruling or the prevailing local rate. United States v. Wissahickon, 2 Cir., 200 F.2d 936; United States v. Allen Tool Corp., supra; United States v. Corbetta, D.C.S.D.N.Y., 101 F.Supp. 529. But the weight of authority on the point clearly indicates that the rate of interest to be awarded is a matter within the discretion of the court, the prime consideration being a reasonable compensation for the delay in payment. United States v. Bonnell, supra; United States v. Abrams, supra; United States v. United Drill & Tool Corp. supra; United States v. Edward Valves, Inc., 7 Cir., 1953, 207 F.2d 329; United States v. Hopkins, D.C.N.D. Ohio 1950, 95 F. Supp. 14. The rule finds its best expression in Royal Indemnity Co. v. United States, 313 U.S. 289, 61 S.Ct. 995, 998, 85 L.Ed. 1361, where the court stated, "In the absence of an applicable federal statute, it is for the federal courts to determine, according to their own criteria, the appropriate measure of damage, expressed in terms of interest, for non-payment of the amount found to be due." Although that case did not involve a renegotiation liability claim, the same rule is applicable here.

The trial court, after due consideration, decided in its discretion that 4% interest would adequately compensate the government for defendant's delay in payment of its renegotiation debt. We find no error or abuse of discretion in that decision.

The judgment appealed from is affirmed.

2. The legal rate of interest in both Minnesota and the District of Columbia is 6%.