**SWARTZBAUGH MANUFACTURING CO., Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 14055.**

United States Court of Appeals Sixth Circuit.

April 14, 1961.

Richard B. Swartzbaugh, Toledo, Ohio, for appellant.

Sherman L. Cohn, Dept. of Justice, Washington, D. C., for appellee, George Cochran Doub, Asst. Atty. Gen., Morton Hollander, Atty., Dept. of Justice, Wash-

ington, D. C., and Russell E. Ake, U. S. Atty., Cleveland, Ohio, on the brief.

Before McALLISTER, Chief Judge, and CECIL and O'SULLIVAN, Circuit Judges.

O'SULLIVAN, Circuit Judge.

On July 21, 1955, a government Contracting Officer made a unilateral determination that plaintiff-appellant, the Swartzbaugh Manufacturing Co. (referred to hereinafter as Swartzbaugh or as plaintiff) had been overpaid the sum of $60,929.16 on that company's contract with the government. Pursuant to the contract involved, Swartzbaugh appealed such finding to the Armed Services Board of Contract Appeals. On July 29, 1957, the Board made its decision reducing the government's claim against Swartzbaugh to $45,547.46. The correctness of this decision is not here involved. The principal question before us is whether the government was entitled to charge Swartzbaugh interest on the amount finally found due, to wit: $45,547.46, from the date (July 21, 1955) of the Contracting Officer's determination that Swartzbaugh had been overpaid by the government.

In 1947, Swartzbaugh made a contract with the Quartermaster Corps of the United States Army (Contract No. 70451) for the production and delivery of food containers at a stated price of $1,-716,000. The contract contained a price redetermination clause which provided that within 60 days after completion of the contract, the contractor was to file a cost statement with the government Contracting Officer. This officer had the right to review and audit such cost statement and other pertinent data and Swartzbaugh and the Contracting Officer were thereupon to "negotiate in good faith to agree upon a reasonable revised price for the entire contract." It was provided that in the event of a decrease in price the contractor was to repay or credit the amount of such decrease, "in such manner as the Contracting Officer may direct." If the parties were unable to agree upon such revised price within

90 days after the completion of the contract, such failure to agree was to be deemed a disagreement, "as to a question of fact," and became a "dispute" to be disposed of in accordance with Article II of the contract entitled "Disputes." Article II provided that such disputes not disposed of by mutual agreement, "shall be decided by the Contracting Officer who shall reduce his decision to writing and mail a copy thereof to the Contractor. * * *" The contractor, if not satisfied with such decision, was given 30 days from the mailing of such decision by the Contracting Officer to appeal to the Secretary of War, "whose written decision or that of his designated representative, or representatives, thereon shall be final and conclusive, upon the parties hereto." The Armed Services Board of Contract Appeals (sometimes hereinafter referred to as ASBCA) was the designated representative of the Secretary of War.

After completing the 1947 contract, Swartzbaugh submitted its cost figures. It was unable to agree with the Contracting Officer on a revised price. Thereupon, the Contracting Officer, on November 7, 1950, made a unilateral determination that plaintiff had been overpaid the sum of $199,802.44 on the contract. Demand for repayment of that sum was made on Swartzbaugh. (Swartzbaugh had, in 1950, been paid in full the unrevised price of $1,716,000.00.) Plaintiff appealed to the Armed Services Board of Contract Appeals. On June 26, 1953, the Board, sustaining some of plaintiff's claims of cost, and upholding the Contracting Officer in part, remanded the matter for further negotiations consistent with its opinion. Plaintiff and the Contracting Officer were again unable to agree, and on July 21, 1955, the Contracting Officer issued his said unilateral finding that Swartzbaugh had been overpaid $60,929.16, and made demand on plaintiff to repay such amount to the government. Swartzbaugh appealed to the ASBCA.

The Armed Services Board of Contract Appeals, on July 21, 1957, finally

determined the amount of overpayment owing by Swartzbaugh to the government to be $45,547.46.

Following the Contracting Officer's unilateral decision of July 21, 1955 (fixing the amount of overpayment at $60,-929.60), and commencing in July of 1956, the government began to withhold payments due Swartzbaugh on other contracts which it had with the government as setoffs against the amount the government claimed was due because of overpayments to Swartzbaugh on the 1947 contract (Contract No. 70451). The amounts thus withheld between July 2, 1956, and June 17, 1957, amounted, in all, to $46,607.50. It is apparent that the Contracting Officer, having determined that Swartzbaugh owed the government approximately $60,000, and that the correctness of this was to be determined on appeal, the government merely held up, and paid to itself, the various amounts otherwise due to Swartzbaugh, without currently determining how much of the payments so withheld were to be applied upon the principal of Swartzbaugh's obligation to the government, and how much was to be applied on interest that the government proposed to charge.

Following the ASBCA decision on July 29, 1957, fixing Swartzbaugh's debt at $45,547.46, the government applied the $46,607.50 so withheld by it to the payment of such debt and to interest on it, computed at the rate of five percent per annum from and after July 21, 1955. This latter date was the date upon which the Contracting Officer had made his unilateral determination that Swartzbaugh owed the government $60,929.60. While Swartzbaugh's appeal to the ASBCA was pending, some fifteen checks representing payments due to Swartzbaugh on other contracts were withheld by the government. In the final setoff computation, such checks were serially applied, as of their respective dates, first against such accrued interest and the remainder to the current balances of the original debt. Under this method of setoff, there was, as of June 17, 1957, remaining unpaid of the $45,547.46 a principal balance of $2,455.60. On October 10, 1957, there was due to Swartzbaugh from the United States an amount of $6,875.00 on an additional contract (Contract No. 57–6601) which it had performed for the government. On that date, the government applied $2,455.60 of this amount due to Swartzbaugh to payment of the balance still unpaid on the 1947 contract, and remitted to Swartzbaugh $4,-419.40. The government claims that by this last transaction, all accounts between Swartzbaugh and the government were completely settled.

Plaintiff disputes the government's right to charge interest on its liability of $45,547.46 from the date of the Contracting Officer's demand for $60,929.60 made on July 21, 1955. It contends that no interest should have been allowed to the government on the sum of $45,547.46 until July 29, 1957, when the Armed Services Board of Contract Appeals made its final decision on plaintiff's appeal. It asserts that by that date the full amount of $45,547.46 had been paid by the government's withholding of $46,-607.60 and that the total amount of interest charged during the period of setoffs, to wit: $3,515.64, and a sum of $308.68 cash discounts taken on various amounts due to Swartzbaugh, were illegal. From this, Swartzbaugh contends that there was a balance owing to it of $3,824.32 out of the $46,607.50 withheld by the government. It commenced suit in the District Court on November 6, 1957, to recover this amount, charging that such amount was the balance owing to it under its contract No. 57–6601. This was the contract under which there was due to Swartzbaugh in 1957 the sum of $6,875.00 and which the government claims was satisfied by its payment of $4,419.40 and its application of $2,455.60 to Swartzbaugh's debt to the government.

Plaintiff and defendant both filed motions for summary judgment and the facts above recited were set forth in an affidavit attached by plaintiff to its motion. The District Judge denied plaintiff's motion for summary judgment,

granted defendant's motion for summary judgment and dismissed plaintiff's complaint.

 While other contentions are made by plaintiff, the central and controlling question is the propriety of the government charging interest from the date of the unilateral determination of the amount due from the plaintiff to defendant. The determination of the appropriate rate to be applied, if interest was properly allowable was within the discretion and judgment of the district court. Royal Indemnity Co. v. United States, 1941, 313 U.S. 289, 296, 61 S.Ct. 995, 85 L.Ed. 1361; United States v. Abrams, 6 Cir., 1952, 197 F.2d 803, 805, 806; United States v. Ring Construction Co., D.C.Minn.1953, 113 F.Supp. 217, 220, affirmed 8 Cir., 1954, 209 F.2d 668, 674. The district judge determined that five percent was an appropriate rate of interest. It was likewise permissible for the government to offset accounts due to plaintiff on other contracts against an amount owing to the government for overpayment to plaintiff on the contract which was subject to price redetermination. United States v. Munsey Trust Co., 1947, 332 U.S. 234, 239, 67 S.Ct. 1599, 91 L.Ed. 2022; Gratiot v. United States, 1841, 15 Pet. 336, 40 U.S. 336, 370, 10 L. Ed. 759; McKnight v. United States, 1878, 98 U.S. 179, 186, 25 L.Ed. 115; Barry v. United States, 1913, 229 U.S. 47, 52, 53, 33 S.Ct. 681, 684, 57 L.Ed. 1060. The language of Justice Lurton in the Barry case is particularly apt here, "It would be folly to require the government to pay under the one contract what it must *eventually* recover for a breach of another."

 We come, then, to the crucial question of whether as of July 21, 1955, the plaintiff was indebted to the United States in any amount upon which interest should be charged. Plaintiff asserts that until it had exhausted its appeal procedures and a final determination was made by the Armed Services Board of Contract Appeals in 1957, it owed nothing to the government or at least the amount of its debt was not fixed or liquidated, and therefore it should not pay interest on the amount overpaid to it until decision on its appeal concluded the matter. We do not agree. Plaintiff entered into a contract which gave the Contracting Officer the right, absent agreement between him and the contractor, to unilaterally determine whether the contractor had been overpaid and by his findings in this regard to make the price redetermination called for by the contract. There having been a dispute between plaintiff and the Contracting Officer, the contract provided that the dispute, "shall be decided by the Contracting Officer, who shall reduce his decision to writing and mail a copy thereof to the contractor." This the Contracting Officer did on July 21, 1955, and, thereupon, demanded payment of the amount unilaterally determined to be owing by plaintiff to the government. The fact that neither the contract nor any statute then provided for interest to be charged on a determined overpayment by the government to plaintiff does not detract from the government's right to collect interest on money overpaid to and withheld from it by a contractor. Billings v. United States, 1914, 232 U.S. 261, 286, 34 S.Ct. 421, 58 L.Ed. 596; Miller v. Robertson, 1924, 266 U.S. 243, 257, 258, 45 S.Ct. 73, 69 L.Ed. 265; Royal Indemnity Co. v. United States, 1941, 313 U.S. 289, 296, 297, 61 S.Ct. 995, 85 L.Ed. 1361. "That interest may be recovered on money due the government even in unilaterally determined liability is well recognized." United States v. Philmac Mfg. Co., 3 Cir., 1951, 192 F.2d 517, 519. Such rule has been recognized in this Circuit. Jackson v. United States, 6 Cir., 1957, 242 F.2d 333, 334; United States v. Abrams, 6 Cir., 1952, 197 F.2d 803, 805, 806.

It would not be questioned here but that interest would be chargeable against plaintiff for the amount the Contracting Officer unilaterally determined was owing by plaintiff to the government if, without appeal, plaintiff had failed to pay such amount after demand. Does the fact that plaintiff exercised his right to

appeal to the Armed Services Board of Contract Appeals, which thereafter reduced the amount of plaintiff's debt, alter the situation? We think not.

We believe the situation here is fairly comparable to amounts recovered as excess profits upon renegotiation of war contracts. Interest has been held to be payable on such excess profits from the time of demand for payment. United States v. United Drill & Tool Corp., 87 U.S.App.D.C. 236, 183 F.2d 998, 999; Jackson v. United States, 6 Cir., 1957, 242 F.2d 333, 334.

Even though the case of Ring Construction Corp. v. United States, 8 Cir., 1954, 209 F.2d 668, 669, was dealing with the Renegotiation Act, 50 U.S.C.A.Appendix, § 1191, we feel that its reasoning is sound and we follow it as authority for sustaining the judgment here. In that case, "the Secretary of War made a unilateral determination that defendant (Ring Construction Corporation) had realized excessive profits in the sum of $293,844.24 from its two war contracts with the United States government and demanded repayment of that amount." The Ring Construction Corporation, as provided by statute, filed timely petition in the Tax Court seeking a redetermination of the claimed excess profits. Without detailing the rather involved litigation that followed, it is sufficient to say that the Tax Court's final decision reduced the claim of the government to $210,479.31. The Eighth Circuit held that the Ring Construction Corporation was liable for interest on this reduced amount from the time of the Secretary of War's unilateral determination to the date of payment. The Eighth Circuit quoted with approval from United States v. United Drill & Tool Corp., 8 U.S.App. D.C. 236, 183 F.2d 998, 1000.

" 'Sums due the United States upon renegotiation of contracts are clearly debts. The contractor owes the United States because the United States has overpaid him. Interest, therefore, runs from the date upon which the contractor fails to make repayment, after proper no-

tice.' * * * This is true even though the liability is unilaterally determined." 209 F.2d 668, 673.

Plaintiff further argues that in the renegotiation cases the determination of the Secretary of War or his delegate was the final administrative act in the renegotiation proceeding, whereas in this case, the final administrative act did not occur until the 1957 decision of the Armed Services Board of Contract Appeals. In the renegotiation cases, the Tax Court hears the case de novo [50 U.S.C.A.Appendix, § 1191(e)(1)] and makes its own redetermination. The Tax Court is "an independent agency in the Executive Branch of the Government"— 26 U.S.C. § 7441. The fact that the Armed Services Board of Contract Appeals may, on appeal from the finding of the Contracting Officer, hear the matter de novo is not controlling.

 The fact that a judgment or decree (including chancery cases where the appellate court hears the matter de novo) is reduced on appeal does not prevent the exaction of interest upon the reduced amount from the date of the original judgment or decree. Bates v. Dresser, 1920, 251 U.S. 524, 531, 532, 40 S.Ct. 247, 64 L.Ed. 388; DeLaRama v. DeLaRama, 1916, 241 U.S. 154, 159, 36 S.Ct. 518, 60 L.Ed. 932; Kneeland v. American Loan & Trust Co., 1891, 138 U.S. 509, 11 S.Ct. 426, 34 L.Ed. 1052. No equitable principle was offended by the allowance of interest in the case at bar. Plaintiff had the use of, and withheld, the government's money for the period for which it was required to pay interest.

Plaintiff also challenges the propriety of cash discounts taken by the government in the amount of $308.68 in offsetting the various amounts due plaintiff against indebtedness to the government. Plaintiff, however, does not question but that amounts due to it were credited against its own debt as of the dates that would entitle the government to whatever discounts were allowable for prompt payment. The contracts providing for such cash discounts are not before us, nor

does plaintiff point out any breaches of the discount provisions thereof.

We affirm the judgment of the district court. Such decision makes it unnecessary for us to consider the defendant-appellee's motion to dismiss plaintiff's appeal.