DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Gayle M. Weber and Daniel J. Weber were married on June 18, 1966. Two children were born as issue of the marriage: Wendy Sue Weber, born on April 4, 1967, and Candace[1] Jean Weber, born on April 28, 1973. Gayle and Daniel were divorced in San Diego, California on December 15, 1976. On May 15, 1980, Gayle filed a complaint in the Summit County Court of Common Pleas requesting that the California order, captioned "Interlocutory Judgment of Dissolution of Marriage," be given full faith and credit and alleging that Daniel "was going to refuse to pay for the tuition of" the parties' two children. The Separation Agreement, adopted as the order of the Superior Court in San Diego and as an order of the Court of Common Pleas of Summit County, Domestic Relations Division, provides:
 "As and for additional child support
husband agrees to the following:
 (a) Husband shall pay the tuition of each child at the school of Wife's choice until the child reaches the age of 21 years of age."
(Emphasis added.)
Daniel's child support obligation (other than his tuition obligation) was terminated on March 25, 1992, when Candace, the younger daughter, was emancipated. Even after that date, however, the parties continued to appear before the domestic relations court to determine the extent of their respective obligations. The parties submitted evidence of educational expenses and financial aid, and on April 13, 1993, the trial court granted judgment in favor of Gayle for $18,690. This judgment entry totaled Wendy and Candace's educational expenses and subtracted any grants received by the girls from this total. On May 11, 1993, Daniel appealed that judgment to this court. We found that tuition included only course fees. Weber v. Weber (Jan. 5, 1994), Summit App. No. 16278, unreported, at 7-8 ("Weber I"). This is significant, because per our ruling, Daniel is liable only for course fees, not other school-related expenses such as room and board. We remanded the case, instructing the trial court to apply grants "directly earmarked for tuitional expenses" against Daniel's tuition obligation.
Upon remand, the magistrate considered the matter and found that there was "no evidence that the `financial award' received by the parties' children was directly earmarked for tuitional expenses" and decided that the amount of grants should be subtracted from the total amount of educational expenses, not just those expenses labeled "tuition." Letters from Principia College's Financial Aid Committee and Assistant Director of Financial Aid broke down college expenses into categories including "tuition" and "room and board," but these documents did not specify which grants, work study funds or loans were to be applied specifically to tuition costs. The record also contains a similar document from Bradley University, which Wendy had attended for one year. These documents totaled the costs for tuition, room and board, and other expenses and then deducted any financial aid received from this total. The magistrate found that Daniel owed a total of $31,675.00. The magistrate further found that because Daniel was to benefit from any grants "directly earmarked for educational expenses," he had the burden of proving which grants were so earmarked.
On December 4, 1996, the trial court adopted the magistrate's decision and made it an order of the court pending the parties' objections. Both Gayle and Daniel filed timely objections to the magistrate's decision. Daniel objected to the magistrate's allocation of the burden of proof, the award of $31,675.60 (when Gayle's purported stipulation contended that Daniel owed only $12,316.30), and the magistrate's finding that there was no evidence that the financial award received by the children was directly earmarked for tuition. Specifically, he argued that there was evidence that at least some of the money was earmarked for tuition because Wendy had testified before the magistrate that grants were based on "a student's entire package of expenses."
Gayle responded to Daniel's objections, observing that there was no transcript of proceedings or affidavit of evidence in support of his objections as required by Civ.R. 53(E)(3)(b) and arguing that the magistrate's findings of fact must therefore be accepted by the trial court. Gayle objected to the magistrate's failure to award her prejudgment interest.
On January 28, 1997, the trial court sustained Daniel's objections and overruled Gayle's objections, holding that the parties had stipulated to a pro rata application of grant money to those expenses labeled as "tuition" and that Gayle was not entitled to prejudgment interest. On June 9, 1997, the trial court filed another judgment entry finding that Daniel owed Gayle tuition expenses in the amount of $12,113.60. Gayle appeals, assigning two errors. We reverse.
 I.
Gayle's first assignment of error states:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY SUSTAINING APPELLEE'S OBJECTIONS TO THE MAGISTRATE'S DECISION DATED DECEMBER 4, 1996.
We will review the trial court's ruling on objections to the magistrate's decision by inquiring whether the trial court abused its discretion in ruling on the objections. Rogers v. Rogers
(Dec. 17, 1997), Summit App. No. 18280, unreported, at 2. We may reverse the trial court's determination only where the trial court's actions were arbitrary or unreasonable. Id. at 3. We find that the trial court abused its discretion in sustaining Daniel's objections to the magistrate's decision.
 A
Gayle's first assignment of error has two sub-parts. The first sub-part states:
 The trial court erred in determining that Ms. Weber stipulated that a portion of the children's grants was "directly ear-marked for tuitional expenses". [sic]
Gayle argues that no grants were "directly earmarked" for tuition expenses and therefore the amount of grants should be applied to the total amount of educational expenses.
The issue under this sub-part to Gayle's first assignment of error is: did Gayle stipulate that sixty-seven percent and seventy percent of the grants received should be applied to tuition expenses?
On October 18, 1994, Gayle filed a memorandum in support of her position regarding the application of grants to educational expenses. This memorandum states:
 Because there is no evidence to establish that the grants were "directly earmarked for tuitional expenses" these grants should not be applied to tuitional expenses until room and board expenses are met in full.
On November 18, 1994, Gayle and Daniel stipulated to the following regarding tuition expenses and grants:
Wendy's Tuition Expenses [1987-1988]
Tuition $4,374.00 (70% of total)
Other Expenses $1,890.00 (30% of total)
Total $6,234.00 (100% of total)
Grants rec'd $2,132.00
[Daniel's] $1,926.00
direct payments
Following this summary of expenses were sections labeled "Plaintiff's Contention" and "Defendant's Contention." The section labeled "Plaintiff's Contention" set forth the following:
 [Gayle] contends 70% of the grants should be applied to tuition based on the % of tuition cost to grants.
By subtracting from the tuition amount seventy percent of the grants received and then subtracting Daniel's direct payments, the purported balance owed by Daniel for Wendy's tuition is $955.60. The section labeled "Defendant's Contention" sets forth the following:
 [Daniel] contends grants reduce tuition costs at 100% not as a % of tuition to other expenses.
Using Daniel's formula, the balance owed by him for Wendy's tuition is $326.00.
Similar summaries of expenses and calculations contended by Gayle and Daniel are set forth for Candace's 1990-1991[2], 1991-1992, and 1993-1994 tuition expenses. Using Gayle's contended percentages for both Wendy and Candace, Daniel owes a total of $12,316.30. Using Daniel's contentions, he owes a total of $3,673.00
Gayle argues that her "contentions" are not a stipulation that the grant money should be applied to tuition expenses in the amount set forth in her "contentions," but rather that her "contentions" are an alternate method of calculation she offered for the magistrate's use. Her initial position is that since no grant money is specifically earmarked for tuition expenses, grant money should be subtracted from the total amount of educational expenses. This position is set forth in Gayle's response memorandum on the stipulations, filed on April 28, 1995, which states:
 As the evidence at hearing has established, no grants are earmarked as tuitional in nature. Therefore, [Daniel] is entitled to no benefit for any grant. However, in the interest of fairness, [Gayle] has acknowledged that a pro rata application of grants to both tuitional and non-tuitional expenses would be appropriate.
On December 26, 1996, Gayle reiterated this position in her response to Daniel's objections to the magistrate's December 4, 1996 decision.
 [Gayle] has maintained that none of the grant money should be allocated to [Daniel] throughout this litigation. [Daniel] references the stipulations prepared by [Daniel's] counsel. These stipulations reflect the arithmetical means of allocating the grants 1) under [Daniel's] position that ALL grant money should first benefit him and 2) [Gayle's] alternative position that, IF the grant money is not allocated first to the children, it should be allocated on a pro rata basis to all of the children's educational expenses and not solely to [Daniel's] tuition obligation.
(Emphasis sic.) The magistrate did not mention that Gayle stipulated to a pro rata application of grants received. Reading the above quoted pleadings together, we agree with Gayle's position that there was no stipulation that the grant money should be applied to the children's educational expenses on a pro rata
basis. Therefore, Part A of Gayle's first assignment of error is sustained.
 B
Gayle's second sub-part under her first assignment of error states:
 The trial court erred by allocating financial aid to Dr. Weber where there was no evidence that any of the portion of the children's grants was "directly earmarked for tuitional expenses". [sic]
Civ.R. 53 (E)(3)(b) states in part:
 Any objection to a finding of fact shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that fact or an affidavit of that evidence if a transcript is not available.
However, no transcript or affidavit of the evidence was submitted with the parties' objections to the magistrate's decision. The magistrate's decision stated that Wendy had testified that the Pell Grant she received was "based on the total cost of fees for course and fees for room and board" and that "the Cashier, the Registrar, the Financial Aid Administrator had all stated that Grants were based upon a student's entire package of expenses." The magistrate's decision also quoted a letter from John Huelster, Chief Business Officer of Principia College, the private college attended by Candace and Wendy. The letter stated that "[w]e simply debit all of the charges and credit all of the financial aid payments." The magistrate found that there was no evidence that the financial award received by the parties' children was directly earmarked for tuitional expenses.
 We agree that the unambiguous meaning of a requirement to pay "tuition" compels the obligor to pay the primary cost of attending an academic institution, exclusive of room, board, books and other miscellaneous expenses, less any grant, scholarship or other financial award directly ear-marked for tuitional expenses.
(Emphasis added.) Weber I, Summit App. No. 16278, at 9. Now we are called upon to define "directly earmarked." Webster's New Collegiate Dictionary defines "earmark" as "2: to designate (as funds) for a specific use[.]" Webster's New Collegiate Dictionary (1980) 354. Black's Law Dictionary provides a similar definition. "Property is said to be ear-marked when it can be identified or distinguished from other property of the same nature." (Emphasissic.) Black's Law Dictionary (6 Ed. 1990) 508.
There is no evidence of this type of earmarking or designation of financial aid funds in the record. To the contrary, it appears that all educational expenses are totaled, and all financial aid is then subtracted from that total. Perhaps some grants or scholarships are specifically designated for tuition. However, that does not appear to be the situation in the case at bar.
Ohio having no case law on point, we look to other jurisdictions for guidance. In a recent New York case, the family court ordered the father to pay the full college bill "less any tuition credits received by Mother or Father, or credits to which either is entitled but has not actually received, less any scholarship monies actually received by Son to the extent said scholarship money is not indicated as a credit on the total bill[.]" (Emphasis sic.) Dzierson v. Dzierson (1997), 661 N.Y.S.2d 779, 782. An Iowa court recently determined the applicability of an Iowa statute that allowed an award of postsecondary education expenses. The statute does not separate "tuition" expenses from other educational expenses. Iowa Code section 598.21(5A). The court stated that the child's expected contribution from scholarships, loans, and earnings is to be deducted from the reasonable cost of a postsecondary education. In re Marriage ofGriffin (1997), 570 N.W.2d 258, 260. A Missouri court also recently decided a similar issue, stating that "any court order for the payment of educational expenses should properly be based on actual out-of-pocket costs to the student." Panettiere v.Panettiere (1997), 945 S.W.2d 533, 539-540. However, the court went on to hold that the husband was required to pay one-half of the out-of-pocket tuition costs, minus any scholarships, grants, stipends or other cost reducing monies actually received, the maximum liability being one-half of the full tuition amount, if no such monies were received to reduce the tuition costs. Id. at 540.
It appears to be customary for colleges to lump all costs together, and then subtract from those costs all financial aid. Absent evidence of actual "earmarking" of financial aid awards for application to tuition expenses, we cannot generally presume such awards were so earmarked. This would not be the case, however, as to the extent that any grant or scholarship amount is in excess of non-tuition educational expenses. Since there are only two categories of expenses, the amount by which scholarships and grants exceed the total expenses for one category can be considered as earmarked for the other category. In other words, Daniel should also receive credit for the amount by which scholarships and grants exceeded non-tuition expenses.
 3. Burden of Proof
This leads us directly to our next topic of discussion. Does the proponent of the application of earmarked awards bear the burden of proving that such awards are "directly earmarked?" In addition to finding that there was no evidence that any of the grants were "directly earmarked" for tuition expenses, the magistrate found that "[t]he burden of proving that `any grant, scholarship or other financial award' is `directly earmarked for tuitional expenses' is upon Defendant, who is seeking to benefit from the `financial award.'" From the evidence contained in the record, it appears that neither Principia College nor Bradley University "directly earmark" financial aid in the manner for which Daniel argues. A financial aid package appears to be based on total educational expenses, which include tuition and room and board. Authority from other jurisdictions supports this type of calculation of expenses and financial aid. Therefore, we will not presume that any of the grants or scholarships received by Wendy and Candace are "directly earmarked" for application to tuition only. An affirmative defense to a contract must be proven by the party asserting such defense. Matchmaker Internatl., Inc. v.Long (1995), 100 Ohio App.3d 406, 408. Daniel undertook an obligation to pay his daughter's tuition expenses in the California separation agreement that was incorporated into the dissolution decree and later granted full faith and credit by the trial court here in Ohio. Any relief from or reduction of this obligation is an affirmative defense which must be proven by Daniel. Allocating the burden of proof to the opponent of such application would require the opponent to prove a negative: that the funds are not directly earmarked for tuition expenses. Such a burden would be difficult to carry, if not impossible, especially when the party is retrospectively attempting to assemble such proof, after the education has been completed and after the financial aid awards have been received and applied to college expenses. Therefore, Daniel has the burden of proving "direct earmarking." If he fails to carry this burden, he gets no credit against his tuition obligation, except that any aid received in excess of non-tuition expenses will be subtracted from his obligation.
Because the parties have stipulated to their daughters' educational expenses and to the amount of financial aid received, this court has enough information before it to determine Daniel's actual tuition obligation. We start with the tuition expenses for each daughter for each year. Second, we subtract direct payments made by Daniel, so that one hundred percent of his direct payments are applied to tuition. Third, we subtract the amount by which any grant or scholarship amount exceeds non-tuition expenses. This formula will allow Daniel to benefit from his direct payments as well as from any amount of financial aid in excess of his remaining tuition liability. Using this formula, we find that Daniel owes Gayle $20,375.[3]
Gayle's second sub-part to her first assignment of error is overruled in part and sustained in part.
 II.
Gayle's second assignment of error states:
 THE TRIAL COURT ERRED IN FAILING TO AWARD INTEREST WITH THE RESULT THAT MS. WEBER AND THE CHILDREN WERE DENIED THE USE OF THEIR MONEY DURING THE YEARS FROM THE TRIAL COURT'S FIRST AWARD OF A MONEY JUDGMENT UNTIL THE SECOND AWARD OF A MONEY JUDGMENT.[4]
R.C. 1343.03 provides for interest on judgments and provides in part:
 (A) [I]n cases * * * when money becomes due and payable * * * upon all judgments * * *, the creditor is entitled to interest[.]
 (B) [I]nterest on a judgment * * * shall be computed from the date the judgment * * * is rendered to the date on which the money is paid.
 "The general rule that a plaintiff is entitled to interest on a judgment is based upon the view that once the judgment is entered in plaintiff's favor, the defendant's obligation is then due and owing. Any delay of payment by the defendant entitles the plaintiff to interest on the money he has a right to possess. Where the delay is caused by the plaintiff, due to his dissatisfaction with a judgment, this court is of the opinion that such a delay should not be awarded interest."
Braun v. Pikus (1995), 108 Ohio App.3d 29, 32, quoting Fowler v.Wilford (May 8, 1987), Erie App. No. E-86-50, unreported. However, later in Braun, the court stated:
 The controlling factor in determining this issue is not which party appealed or which first appealed. Rather the issue turns on which party has the use of the money during the pendency of the appeal — either the judgment debtor can tender payment in full to toll the running of interest or retain use of the money and presumably invest it for the duration of the appeal.
Id. In reaching this decision, the court relied upon the reasoning of Moore v. Jock (1993), 90 Ohio App.3d 413, 416, where the court stated that the prevailing party was entitled to an award of postjudgment interest, absent waiver, estoppel, or tender by the debtor.
This reasoning applies even where the judgment is modified on appeal. "[T]he fact that a judgment or decree is reduced on appeal does not prevent the exaction of interest upon the reduced amount from the date of the original judgment or decree." Viock v.Stowe-Woodward Co. (1989), 59 Ohio App.3d 3, 6, citing SwartzbaughManufacturing Co. v. United States (1961), 289 F.2d 81. We see no reason to limit such rule to a reduction in the judgment amount. The plaintiff should be placed in the same position she would have held had the trial court done what we determined it should have done. See id. (concluding that the trial court was wrong in vacating a jury verdict and ordering a new trial.)
In the case at bar, Gayle received a judgment in her favor on April 13, 1993 in the amount of $18,690. This amount excluded any amount owed for Candace's 1993-94 tuition, because that expense had not yet been incurred. Upon reversal and remand, the trial court again found in favor of Gayle, in the amount of $12,316. This amount did include Candace's 1993-94 tuition expenses.
We find that Gayle is entitled to interest pursuant to R.C.1343.03 on $11,871 from April 13, 1993, the date of the first judgment entry in her favor. This amount represents Daniel's tuition liability for Wendy for the 1987-88 school year, and tuition for Candace for the 1991-92 and 1992-93 school years. Gayle is entitled to interest on $8,504 from January 28, 1997. This amount represents Daniel's tuition obligation for Candace for the 1993-94 school year. Gayle's second assignment of error is sustained in part. We reverse the decision of the trial court and remand the cause for further proceedings consistent with this opinion.
Judgment reversed and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this court, directing the County of Summit Common Pleas Court to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellee.
 Exceptions. _______________________________ WILLIAM R. BAIRD
FOR THE COURT
QUILLIN, J., P. J.
REECE, J.
CONCUR
[1] The pleadings and other documents in the record spell the parties' younger daughter's name as both "Candice" and "Candace." We will use the latter.
[2] While Candace was in high school, the percentage of grant money which Gayle contended should be applied to tuition expenses was sixty-seven percent.
[3] tuition — Child direct — grants =Daniel's (academic expenses payments in excess of year) non-tuition obligation
 Wendy (1987-88) $4,374 1,926 242 $2,206 Candace (1991-92) $9,050 0 3,610 $5,440 Candace (1992-93) $11,700 3,880 3,595 $4,225 Candace (1993-94) $12,357 0 3,853 $8,504
$20,375
[4] Gayle's assignment of error addresses post-judgment interest. In her brief, however, Gayle also argues that she is entitled to pre-judgment interest. We disagree. The Supreme Court of Ohio has held that "arrearages in child support which have not been reduced to a lump-sum judgment are not subject to the interest provisions of R.C. 3143.03."Dunbar v. Dunbar (1994), 68 Ohio St.3d 369, 370.